**Ex parte Robert C. BUCKHANAN, Relator, Original Application for Writ of Habeas Corpus.**

No. 04–81–00243–CV.

Court of Appeals of Texas, San Antonio.

Oct. 15, 1981.

Rehearing Denied Oct. 28, 1981.

R. H. Wester, Jr., Lippe & Wester, Seguin, for appellant.

John Benbow, San Antonio, for appellee.

Before CADENA, C. J., and CLARK and KLINGEMAN, JJ.

## OPINION

CLARK, Justice.

Relator commenced this original habeas corpus proceeding after being adjudged in contempt by the district court for failing to obey that portion of a divorce decree ordering him to pay to his former spouse a part of his military nondisability retired pay. We grant the relief requested and order the relator discharged.

Relator and his former spouse, the respondent in this action, were divorced May 10, 1977, in Guadalupe County, by decree of the 25th Judicial District Court. Relator was at that time a member of the United States Air Force on active duty, with creditable service of approximately 18 years. As part of the division of community property, the court awarded relator's spouse a portion of relator's military retired pay "if and when received" by him. The former spouse's share was ordered to be paid to her monthly by the relator in an amount determined by a formula set out in the decree. Relator retired from active duty on September 30, 1980. At that time he became eligible to receive nondisability retired pay of $1,216.00 per month, and under the terms of the divorce decree he was obligated to pay approximately $468.00 of that benefit each month to his former spouse. Instead, he paid only $300.00 per month to her from October, 1980, through May, 1981, at which time he ceased making payments altogether. Contempt proceedings were initiated in the 25th Judicial District Court by the former spouse in an attempt to enforce that court's May 10, 1977, judgment. On September 2, 1981, after notice and hearing, relator was adjudged in contempt and ordered confined in the Guadalupe County Jail until he paid the sum of $700.00 to satisfy his arrearage.[1] On September 10, 1981, relator sought relief by initiating this original proceeding, and the matter was submitted on briefs and oral argument on September 18, 1981.

Relator relies principally upon *McCarty v. McCarty*, —— U.S. ——, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), and *Ex parte Johnson*, 591 S.W.2d 453 (Tex.1979), to support his contention that he cannot be held in contempt for failing to comply with the judgment in question.

Relator's application for relief by means of habeas corpus is a collateral attack upon a final judgment; i.e., the divorce decree of May 10, 1977. *Ex parte Jones*, 163 Tex. 513, 358 S.W.2d 370 (1962). Relator cannot prevail unless the district court lacked the power to award part of his military retired pay to his former spouse, *Ex parte Jones, id.*; for a final judgment that is only erroneous, and not beyond the power of the court to enter, is not void, and cannot be attacked collaterally. *Humble Oil & Ref. Co. v. Fisher*, 152 Tex. 29, 253 S.W.2d 656 (1953); *Clayton v. Hurt*, 88 Tex. 595, 32 S.W. 876 (1895).

The question which governs our decision, then, is whether applicable federal law, through the supremacy clause[2] of the United States Constitution, preempted the power of Texas courts to treat the relator's military retired pay as community property and divide it prospectively between him and his spouse upon their divorce. If the court's

---

**1.** The record reflects that relator overpaid his child support obligation under the divorce decree and was given credit by the district court for the amount of the overpayment against the arrearage of military retired pay, which result-ed in the net figure of $700.00. Relator's child support obligation ended in 1978 and is not in issue.

**2.** U.S.Const. art. VI, cl. 2.

power was not preempted, then that provision of the decree may be enforced against relator by means of contempt; but if the court's jurisdiction over relator's retired pay was preempted, then that provision is void and the relator cannot be compelled to obey it. *Ex parte Johnson, supra.*

Our resolution of this important question is governed by two recent decisions of higher courts. The first is *McCarty v. McCarty,* —— U.S. ——, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), in which the United States Supreme Court, relying heavily upon its decision in *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), held that state community property laws have been preempted by the military retirement statutes, and that state courts, therefore, have no power to reduce a retired military member's compensation by treating it as community property subject to division upon dissolution of the marriage. Whatever uncertainty may have existed before *McCarty* as to the power of state courts to divide military retired pay as community property has now been resolved. Notwithstanding a vigorous dissent, the court has found that Congress intended to preempt state community property laws in that regard.

Unlike the case before us, however, *McCarty* arose as a direct attack upon the judgment there in question, and the court did not deal with questions of retroactivity or *res judicata.* What, then, is the effect of *McCarty* upon state court judgments, such as the one under collateral attack by the relator, which have become final?

To determine whether Congress had preempted state community property laws with respect to military retired pay, the United States Supreme Court analyzed at length, in *McCarty,* the same federal statutes that govern the rights of the relator in this case.[3] Quoting what it described as the holding of *Hisquierdo,* the court said in *McCarty:* "[t]he pertinent questions are whether the right as asserted conflicts with the express terms of federal law and

whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition." —— U.S. at ——, 101 S.Ct. at 2735, 69 L.Ed.2d at 598.

The Court then found in the applicable statutes and their legislative histories a statutory scheme sufficiently explicit to justify a finding that Congress had indeed preempted state community property laws. It also found a sufficient threat of "grave harm to 'clear and substantial' federal interests" to require nonrecognition of the conflicting state laws and concluded that "[s]tate courts are not free to reduce the amounts that Congress has determined are necessary for the retired member." —— U.S. at ——, 101 S.Ct. at 2741, 69 L.Ed.2d at 606.

In determining how *McCarty* affects the judgment under collateral attack before us, it is essential to focus upon what the court said, reduced to the plainest terms; i.e., that Congress, to protect "clear and substantial federal interests," preempted state community property laws with respect to military retired pay prior to 1977 by enacting the military retirement statutes in question. By definition, preemption by specific Congressional enactment took place when Congress acted, in accordance with the statutory scheme. The court, in its opinion of June 26, 1981, preempted nothing; it only considered, determined, and announced what Congress had already done.

The second authority which controls our decision is *Ex parte Johnson,* 591 S.W.2d 453 (Tex.1979), a case so strikingly similar to the one before us that in our view it cannot be distinguished. In *Johnson* the Texas Supreme Court, relying principally upon *Hisquierdo,* held that Veterans Administration disability benefits are not subject to division upon divorce as property, because of preemption by a federal statute, and that the supremacy clause of the United States Constitution precluded the district court from enforcing such an order by punishing the defaulting spouse for contempt. It should be noted that *Johnson,* like the

---

**3.** The divorces of both the relator and McCarty occurred in the same year, 1977, and both men

became entitled upon retirement to receive military nondisability retired pay.

case before us, was a collateral attack upon a district court judgment by means of a habeas corpus application. The Texas Supreme Court, speaking through Justice Barrow, discharged relator Johnson, saying:

> We hold that under the terms of this statute, these benefits are not to be treated as 'property' and future benefits are not subject to division upon divorce as property. Therefore, under the supremacy clause the district court cannot imprison relator for violating such order.

591 S.W.2d at 454.

■ Implicit in *Johnson*, because of the success of the collateral attack, is a holding that the district court's judgment was *void* as to the purported division of benefits preempted by Congressional enactment, and not merely erroneous. *Ex parte Jones, id.; Humble Oil & Ref. Co. v. Fisher, supra.*

■ Respondent argues that the judgment under attack in the case before us is at worst erroneous, and not void, and that the relief sought by relator is thus barred by the doctrine of *res judicata*. We cannot agree. The court pointed out in *McCarty* that when Congress enacted the military retirement system, it acted pursuant to its express constitutional power over the armed forces; and the court observed further that "in no area has the court accorded Congress greater deference than in the conduct and control of military affairs." —— U.S. at ——, 101 S.Ct. at 2743, 69 L.Ed.2d at 608. When Congress has exercised its plenary power to deprive State courts of jurisdiction over a particular subject, judgments of State courts purporting to exercise jurisdiction over the preempted subject are "nullities and vulnerable collaterally." *Kalb v. Feuerstein*, 308 U.S. 433, 436, 60 S.Ct. 343, 344, 84 L.Ed. 370 (1940).[4] No matter how great our concern may be as to the wisdom of Congress' action or the legal and social ramifications of *McCarty*, we are

bound by the authorities we have cited. The district court's power to subject relator's retirement funds to division as community property having been preempted by federal statute, the supremacy clause of the United States Constitution prevents the enforcement of that portion of the judgment of May 10, 1977. *Ex parte Johnson*, 591 S.W.2d 453 (Tex.1979).

As the United States Supreme Court observed in *McCarty* approximately 90 days ago:

> ... Congress may well decide, as it has in the Civil Service and Foreign Service contexts, that more protection should be afforded a former spouse of a retired service member. This decision, however, is for Congress alone ... Congress has weighed the matter, and "[i]t is not the province of state courts to strike a balance different from the one Congress has struck."

—— U.S. at ——, 101 S.Ct. at 2743, 69 L.Ed.2d at 608 (1981) (citing *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979)).

The relator is ordered discharged.

KLINGEMAN, Justice, dissenting.

I dissent. I would not grant the Writ of Habeas Corpus.

The majority opinion correctly sets forth the factual background of the case. It should be pointed out, however, at the time this judgment was rendered the part of the judgment under attack awarding relator's wife a portion of relator's military non-disability retired pay and the formula or method of division used by the trial court in determining the amount the wife was to receive was a legal and valid method of making such a division, sanctioned and approved by many decisions of Texas courts, both trial and appellate, over a period of many years.

---

4. The *Kalb* doctrine remains one of the few exceptions to the general rule that final judgments are not subject to collateral attack, even on grounds of lack of jurisdiction. The doctrine is rooted in the principle that collateral attacks on subject matter jurisdiction in preemption cases may serve an important policy extrinsic to the judicial system. The continuing vitality of the *Kalb* doctrine is reflected by its codification in the Restatement (Second) of Judgments. *See* Moore, *Collateral Attacks on Subject Matter Jurisdiction: A Critique of the Restatement (Second) of Judgments*, 66 Cornell L.Rev. 534 (1981).

It appears from the record that although relator was ordered to pay his wife approximately $468.00 a month out of his military retired pay, he immediately began a course of paying only $300.00 to his wife and continued to do so from October, 1980, through May, 1981, at which time he ceased making payments altogether. It is clear that for a period of many months before the decision in *McCarty v. McCarty*, —— U.S. ——, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), was handed down by the Supreme Court, relator had deliberately and in direct violation of a valid and subsisting court order refused to pay the designated amount. No appeal was taken from the judgment of divorce. The judgment has become final. Relator's act was in contempt of court, therefore, he should be assessed some punishment for his deliberate and contemptuous violation of the court's order.

There are, however, a number of other reasons why I voice my dissent. Such reasons are hereinafter set forth.

(1) Despite the majority holding to the contrary, I do not consider the judgment entered by the trial court to be a void judgment. In my opinion it is, at the worst, an erroneous judgment. The majority opinion correctly points out a final judgment which is only erroneous and not beyond the power of the court to enter is not void and cannot be attacked collaterally. Consequently, relator's collateral attack on such judgment must fail.

(2) The majority opinion relies on *McCarty v. McCarty, id; Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979); and *Ex Parte Johnson*, 163 Tex. 513, 358 S.W.2d 370 (1962), to support its decision. In my opinion the case before us is distinguishable. *McCarty* was a direct attack on a final judgment rather than a collateral attack. While *Ex Parte Johnson*, was a Habeas Corpus proceeding and a collateral attack, it did not involve military

retired pay. *Ex Parte Johnson* involved Veteran's Administration disability benefits. Such federal statute is separate and distinct from the federal military retired pay statute and contains specific provisions clearly showing a Congressional intent that the benefits to be paid the veteran are not to be affected or divided in any manner, as well as, a clearly expressed Congressional intent that state law be preempted.[1] I find no such compelling language in the federal military retired pay statute.

(3) The cases relied on by the majority do not discuss the question of retroactivity. The majority opinion at least indicates to me that a retroactive application would be required. In my opinion such retroactive application is not justified. The consequences of retroactive application are frightening. Retroactive application opens the door to a number of suits filed by military retirees in similar situations, where the military retiree will seek a return of all or part of the award made to his spouse of a portion of his military retired pay. This leaves the other spouses in a most difficult position. Many spouses have devoted a great deal of their lives to the mutual benefit of both their military spouses and the military. Often such divorced spouses have accumulated little if any assets to support themselves. Consequently, in order to support themselves many divorced spouses will be forced to enter a difficult job market plagued with many problems. In addition, Texas courts, in order to achieve a basically equal division of property, often have awarded the home or other property to the other spouse, usually the wife. If this property award is disturbed the property division will no longer be just and equitable. Multifold other problems could arise with regard to the property division. Some authorities contend in these types of cases the entire property division provided for in the divorce decree will have to be done anew.

1. "On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has 'positively required by direct enactment' that state law be preempted." *His-* *quierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979) (citing *Wetmore v. Markoe*, 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904)) (Hisquierdo dealt with pension rights under the Railroad Retirement Act).

The Supreme Court in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), set forth a three-prong test to be applied in cases dealing with the retroactivity question. The test is set forth as follows:

In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see e.g., *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, supra, 392 U.S., [481] at 496, 88 S.Ct., [2224] at 2233, [20 L.Ed.2d 1231], or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, e.g., *Allen v. State Board of Elections*, supra, 393 U.S., [544] at 572, 89 S.Ct., [817] at 835 [22 L.Ed.2d 1]. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Linkletter v. Walker*, supra, 381 U.S., [618] at 629, 85 S.Ct., [1731] at 1738 [14 L.Ed.2d 601]. Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Cipriano v. City of Houma*, supra, 395 U.S., [701] at 706, 89 S.Ct., [1897] at 1900 [23 L.Ed.2d 647].

After considering each factor set forth in *Chevron*, I have concluded that in cases involving division of property as is here involved, a retroactive application should not be given. The Supreme Court stressed that a court should weigh the inequities imposed by retroactive application and stated that where a decision of the court could produce substantial inequitable results if applied retroactively, there is ample basis for avoiding the injustice or hardship by a holding of nonretroactivity. We have clearly such a situation here.

(4) Furthermore, in my opinion, the holding in *McCarty* that California community property law was preempted does not necessarily mean that the community property laws of other community property states, such as Texas, are necessarily preempted so far as military retired pay is concerned.

For the hereinbefore set forth reasons, I would not grant the Writ of Habeas Corpus.