**Ex parte Simon Y. RODRIGUEZ, Relator.**

**No. 04–81–00333–CV.**

Court of Appeals of Texas, San Antonio.

Dec. 10, 1981.

Rehearing Denied June 30, 1982.

Michael D. Bowles, San Antonio, for appellant.

Gregory Grigsby, San Antonio, for appellee.

Before CADENA, C. J., and ESQUIVEL and BUTTS, JJ.

## OPINION

ESQUIVEL, Justice.

This is an original habeas corpus proceeding seeking relief from an order of commitment.

Relator Simon Y. Rodriguez refused to comply with an agreement incorporated in his divorce decree and thereby refused to deliver to Elsa Rodriguez, his former wife, 34.6% of the military retirement entitlements he received during the months of June and July, 1981.

The trial court found that relator was in arrears in the amount of $1,380.18 and ordered him confined to Bexar County jail for 30 days and until he purged himself of contempt by payment of this sum plus court costs.

Mr. Rodriguez's main contentions are that (1) the order holding him in contempt is a conditional order which denied him due process; (2) the order violated by him is too vague to provide a basis for an action in contempt; and (3) the order, which incorporated the agreement dividing his military retirement pay, has been rendered void *ab initio* or, alternatively, has been rendered unenforceable by *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) and *Ex parte: Buckhanan,* 626 S.W.2d 65 (Tex.App.—San Antonio, 1981).

We overrule all of his contentions and remand Mr. Rodriguez to the custody of the Bexar County Sheriff.

On March 17, 1978, Simon Rodriguez and Elsa Rodriguez were divorced. The divorce decree recites that the parties had reached an agreement concerning the disposition of property, *interalia.* In pertinent part, the divorce decree states:

> The Court finds that the parties have entered into an agreement for the division of their community property and that same is hereby incorporated into this Decree of Divorce by reference and made a part hereof. IT IS FURTHER ORDERED that the parties are ORDERED to comply and carry out fully all of the provisions of the community property agreement.

Under the terms and conditions of the agreement, the relator appointed himself trustee of 34.6% of the military retirement entitlements and obligated himself to deliver to respondent these sums when received by him. In pertinent part, the agreement incident to divorce states:

F. Husband is retired from the United States Army with the rank of Lieutenant Colonel and is presently receiving benefits based on his total accumulated years of service as a result of his having completed his service with the United States Army. Both parties agree and covenant that the community interest in and to the retirement entitlements has been determined by computing the total number of years the parties have been married and expressing that as a fractional interest as the total number of years accumulated by the Husband as retirement benefits with the military service. The total community retirement entitlements are 69.2% of the total retirement entitlements received by the Husband.

The parties further covenant and agree that the Wife's interest in and to the community retirement entitlements, expressed as a fractional percentage of the total retirement entitlements is 34.6% of the total retirement benefits to be received by the Husband. Both parties further covenant and acknowledge that prior to retiring from the United States Army that the Husband exercised his election to have widow benefits deducted as a portion of the retirement entitlements. Therefore, in computing or arriving at the amount of the retirement entitlements to be furnished to both Husband and Wife after this divorce, the amount of deductions deducted from the total retirement pay as payment for the widow survivor benefits, shall be deducted from the total sum authorized to be paid to the Husband in arriving at the term for definitial purposes of "total retirement entitlements."

Both parties covenant and agree that the "total retirement entitlements" which have heretofore accumulated or may hereinafter accumulate, including all increases or reductions, additions, benefits, and compensation shall become known as the SIMON AND ELSA RODRIGUEZ TRUST. The Husband now declares himself to be a Trustee for the Wife's benefit of 34.6% of the "total retirement entitlements." As Trustee the Husband agrees that when he receives any such benefit, he will promptly furnish to the Wife 34.6% of the total retirement entitlements as that term is hereinabove defined. This does not include an interest in and to any income tax withholdings. It is understood and agreed that each party shall be liable for payment of all taxes on their respective proportional shares derived from the "total retirement entitlements" as defined. Husband further agrees that the Decree of Divorce granted in this case may contain provisions that will subject Husband to decrees for specific performance and related contempt proceedings if Husband fails to make the payments called for in this paragraph or elsewhere in this Agreement.

Additionally, the agreement notes:

Section VIII
AGREEMENT TO SURVIVE
JUDGMENT

This Agreement, if approved by the Court and incorporated in the Court's judgment, shall survive the judgment and thereafter be binding on the parties, their heirs and representatives, until it has been fully performed according to its own terms.

Relator argues that he is being illegally confined and restrained because the order holding him in contempt is a conditional order. Consequently, he argues that he was denied due process protection. Specifically, relator maintains that his due process rights of notice and hearing were not met before he was adjudged in contempt and ordered imprisoned. In support of his argument, relator relies upon *Ex parte: Crocker*, 609 S.W.2d 833 (Tex.Civ.App.—Tyler 1980, no writ). A comparison of the contempt orders in this case and in *Crocker* leads us to the conclusion that *Crocker* is inapplicable.

■ Relator was imprisoned by virtue of a commitment order issued pursuant to the final contempt order of October 15, 1981. This final contempt order recites that a hearing was held and that all parties appeared in person and by attorney; that the hearing was for the purpose of permitting relator to show cause why the suspended original commitment order of August 26, 1981, extending his commitment to September 30, 1981, should not be revoked; that after hearing all of the evidence and argument of counsel the relator was held to be in contempt for the same violations of the orders in the original divorce decree as had been found in the original contempt order; that his punishment be assessed at thirty days in the Bexar County jail and until he purged himself of contempt by full observance of the orders in the original divorce decree, i.e., by paying the arrearage of $1,380.18 to respondent and $135.00 costs of court.

The contempt order in *Crocker* assessed a punishment of sixty days in jail and a fine of $250.00 against the relator; however, the issuance of the commitment order and payment of the fine were suspended on the condition that (1) relator pay a partial payment on the arrearage before a date certain; (2) relator pay an additional amount on the arrearage weekly until the amount due and owing was paid in full; and (3) relator continue to pay promptly and timely the child support payments pursuant to the decree of divorce. The *Crocker* contempt order further provided that if the conditions were not fully complied with the court would issue a commitment order and capias for the arrest of relator, without further notice or hearing. The relator in *Crocker* was subsequently confined as a result of a commitment order issued without benefit of notice and hearing.

In *Crocker*, the Tyler Court found that the contempt order was a conditional order that provided no authority for arrest and confinement. As a consequence, the appellate court then ordered relator's release because due process requirements of notice and hearing were not met when relator was imprisoned.

Although in the present case the original contempt order, signed August 26, 1981, was a conditional order, relator was committed pursuant to the contempt order signed October 15, 1981. *Crocker* clearly is inapplicable because the evidence demonstrates that relator Rodriguez was afforded due notice and hearing prior to his commitment.

■ As regards relator's argument that the order violated by him was too vague to provide a basis for contempt, we disagree. Prior to the trust being recognized by the judgment of the court, the trust was agreed to by relator and respondent. At that time, relator had no trouble understanding the language of the trust under any theory, including vagueness. In fact, the relator found no difficulty in complying with the terms and conditions of the trust agreement. The record unmistakably shows that relator fully complied with the trust provisions until *McCarty* was announced. Relator's contention is wholly without merit.

In regard to relator's third contention, the crux of this writ of habeas corpus, the main issue in this case is whether the *McCarty* and *Buckhanan* decisions have rendered the order violated by the relator void *ab initio* or, alternatively, have rendered the order unenforceable. We hold that *McCarty* and *Buckhanan* are inapplicable to the facts of this case.

It is undisputed that the trial court incorporated the agreement incident to divorce into its judgment. The court ordered the parties to comply fully with the provisions and duties expressed in the agreement.

It is undisputed that a trust was created first by agreement and then recognized by the court. The relator was designated trustee under the terms of the trust and respondent was designated beneficiary. The trust res was described as consisting of 34.6% of the total monthly military retirement entitlements received by relator.

■ The law is well settled that legal title to the trust res is vested in the trustee. *McCamey v. Hollister Oil Co.*, 241 S.W. 689,

695 (Tex.Civ.App.—Fort Worth 1922), *aff'd on other grounds*, 115 Tex. 49, 274 S.W. 562 (1925); *Long v. Long*, 252 S.W.2d 235, 247 (Tex.Civ.App.—Texarkana 1952, writ ref'd n. r. e.); *See* Tex.Rev.Civ.Stat.Ann. art. 7425b–7(F) (Vernon 1960). Legal title in the entitlements were not awarded, removed or divided by the trial court in the divorce decree; rather, relator Rodriguez appointed himself as trustee of the benefits after he received them and bound himself to deliver to respondent 34.6% of the military retirement entitlements. Therefore, relator has been held in contempt of court for his failure to comply with the provisions of the agreement incorporated in the divorce decree.

▮ The trial court has the power to hold relator Rodriguez in contempt of court for refusing to obey an order directing him to pay to respondent funds which he holds as trustee and to which respondent is legally entitled. *Ex parte Preston*, 162 Tex. 379, 384, 347 S.W.2d 938, 940–41 (1961); *See Ex parte Gorena*, 595 S.W.2d 841, 846–47 (Tex. 1979); *Ex parte Sutherland*, 526 S.W.2d 536, 539 (Tex.1975); *Ex parte Anderson*, 541 S.W.2d 286, 288 (Tex.Civ.App.—San Antonio 1976, no writ).

We also agree with respondent's analogous argument relating to oil and gas leases. It is well settled that bonuses and royalties received by virtue of oil and gas leases that are acquired by the spouse before a marriage, are the spouse's separate property. Assuming, *arguendo*, that the court does not have the power to order the husband to pay any portion of his royalties received by him, there is no prohibition against the spouse, by agreement incident to divorce, from agreeing to be a trustee and agreeing to pay to his former wife a percentage of the royalties received by him. If the spouse fails to comply with agreement incident to divorce incorporated into the judgment, then the court may hold the spouse in contempt.

▮ With regard to the retroactive application of *McCarty*, we hold that McCarty should not be accorded full retroactive effect as the majority has stated in *Ex parte Buckhanan, supra.*

First, we agree with Associate Justice Klingeman's dissent where he maintained that *McCarty* does not meet the retroactivity standards of *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Quoting language from *Chevron Oil Co.*, Justice Klingeman noted:

"The Supreme Court in *Chevron Oil Co. v. Huson*, 404 U.S. 97 [92 S.Ct. 349, 30 L.Ed.2d 296] (1971), set forth a three-prong test to be applied in cases dealing with the retroactivity question. The test is set forth as follows:

In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see e.g., *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, supra, 392 U.S., at 496, 88 S.Ct., at 2233, or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, e.g., *Allen v. State Board of Elections*, supra, 393 U.S., at 572, 89 S.Ct., at 835. Second, it has been stressed that 'we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' *Linkletter v. Walker*, supra, 381 U.S., at 629, 85 S.Ct., at 1738. Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of retroactivity.' *Cipriana v. City of Houma*, supra, 395 U.S., at 706, 89 S.Ct., at 1900.

"After considering each factor set forth in *Chevron*, I have concluded that in cases involving division of property as is here involved, a retroactive application should not be given. The Supreme Court

stressed that a court should weigh the inequities imposed by retroactive application and stated that where a decision of the court could produce substantial inequitable results if applied retroactively, there is ample basis for avoiding the injustice or hardship by a holding of non-retroactivity."

*Ex parte Buckhanan, supra.*

Second, the rationale underlying the *McCarty* decision does not mandate its retroactive application. Nothing in *McCarty* suggests that the Supreme Court intended to invalidate, or otherwise render unenforceable, prior valid and subsisting state court judgments. *See Erspan v. Badgett,* 659 F.2d 26 (5th Cir. 1981).

Marriage and family law are areas of the law of such great importance to the structure of our society that we, as judges, are mandated by society to assure their stability and finality. The effect of retroactivity of *McCarty* on the stability and finality to these areas of the law in Texas would be devastating. Accordingly, we refuse to render this prior final judgment invalid or otherwise unenforceable by giving *McCarty* retroactivity.

Therefore, we hold that a trust was created by judgment of the court when it incorporated the agreement of the parties by reference. We further hold that the court was correct in finding relator in contempt for his failure and refusal to turn over to respondent those monies to which she, as beneficiary, is legally entitled.

We refuse to grant the relief requested by relator and we remand him to the custody of the Sheriff of Bexar County, Texas.

CADENA, Chief Justice, dissenting.

The gratuitous[1] questioning of the soundness of the opinion of Justice Clark, speaking for the majority of the panel in *Ex parte Buckhanan,* 626 S.W.2d 65 (Tex. App.—San Antonio, 1981), is somewhat surprising. The reliance on *Erspan v. Badgett,* 659 F.2d 26 (5th Cir. 1981), without mention of the decision by the Texas Supreme Court

in *Ex parte Johnson,* 591 S.W.2d 453 (1979) is difficult to understand. *Johnson* held that a 1976 divorce decree of a Texas court could not be enforced by contempt proceedings insofar as the decree required a service man to pay one-half of the money received by him from the Veteran's Administration Retirement Fund, in view of the United States Supreme Court decision of *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979). The Court interpreted *Hisquierdo* as requiring the holding that Retirement Fund payments were not subject to division by a state court upon divorce. *Ex parte Johnson,* 591 S.W.2d, at 456. *See also Ex parte Pummill,* 606 S.W.2d 707 (Tex.Civ.App.—Fort Worth, 1980, no writ). In view of the reliance *Buckhanan* places on *Johnson* and *Pummill,* it would be reasonable to expect a discussion of those two cases in the majority opinion in this case. Such a discussion, however, is lacking.

*Johnson* stands for the rule that when a state court's power to treat disability retirement benefits as community property is preempted, a final state decision attempting to divide such benefits cannot be given res judicata effect. *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), makes it clear that state courts have no power to limit the right of a service man to receive nondisability military retirement benefits and that under the Supremacy Clause of the United States Constitution, state courts are precluded from dividing military nondisability retirement pay upon divorce. *McCarty* effectively forecloses the possibility of not applying the rule of *Johnson* to the nondisability retirement benefits involved in this case.

The case now before us differs from *McCarty* and *Buckhanan* in that the portion of the divorce decree partitioning the retirement pay is based upon an agreement between relator and his ex-spouse which the divorce court made a part of its decree. The fact that the divorce decree approves, refers to, and incorporates the property settlement agreement is irrelevant. *Ridgway*

---

1. Neither party in this case challenges the *Buckhanan* holding.

*v. Ridgway,* 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981), involved a state divorce decree requiring the service man to keep certain policies issued under the Servicemen's Group Life Insurance Act in force for the benefit of his children, rather than an attempt by a state court to treat nondisability retirement pension benefits as community property. In *Ridgway,* the United States Supreme Court held that federal statutes dealing with benefits for military personnel must be given their preemptive effect despite contrary provisions of property settlement agreements, since there is nothing to indicate that Congress, in enacting the preemptive statutes, intended to exempt claims based on property settlement agreements from the rule announced in *McCarty.*

Based on *Ridgway v. Ridgway,* 454 U.S., at 61, 102 S.Ct., at 58, reasoning of the Supreme Court in *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), and *Ridgway v. Ridgway,* 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39, it is apparent that the various federal programs designed for the benefit and protection of the military are to be administered in a manner that insures that the benefits will be enjoyed solely by the person in the military service, free from control by state courts in divorce proceedings. As the Supreme Court pointed out in *Ridgway*: "The same approach has been followed in . . . *Hisquierdo v. Hisquierdo,* . . . and *McCarty v. McCarty,* . . . ." 454 U.S. at 55, 102 S.Ct., at 55.

The majority opinion in the case before us relies principally on the theory that because of the property settlement agreement in this case, relator created a trust in favor of his former wife, with himself as trustee. In *Ridgway,* the Supreme Court suggests that the preemption doctrine might not apply in cases involving fraud or breach of trust. *See Yiatchos v. Yiatchos,* 376 U.S. 306, 309, 84 S.Ct. 742, 744, 11 L.Ed.2d 724 (1964). The Court, however, indicates that the possible "fraud or breach of trust amounting to fraud" exception is limited to situations where a person attempts to deprive his spouse of property rights that are vested in the spouse under state law. *Ridgway,* 454 U.S., at 58–59, 102 S.Ct., at 57.[2] In the instant case, the property settlement agreement is not the vehicle by which relator has acquired legal title to the pension benefits; legal title to such benefits was vested in him by federal statute. The situation before us, then, does not come within the fraud or breach of trust exception to the rule of preemption.

According to the majority, the trial court has the power to hold relator in contempt of court under *Ex parte Preston,* 162 Tex. 379, 347 S.W.2d 938. The majority opinion cites *Ex parte Gorena,* 595 S.W.2d 84 (Tex.1979) as additional authority. The holding in *Ex parte Preston, supra,* is inapplicable because the property involved in that case was unquestionably the community property of the parties. *Ex parte Gorena, supra,* has no precedential weight because it was decided prior to the *McCarty* decision.

*In re Cobble,* 592 S.W.2d 46 (Tex.Civ.App. —Tyler 1979, no writ), is analogous to the case now before us. *Cobble* held that a divorce decree incorporating the agreement of the parties concerning child support was enforceable by contempt only to the extent that the support provisions of the decree were authorized by the child support statute. The court held that the portion of the decree which went beyond that which the court was authorized by law to order would be enforceable only by resort to the ordinary processes of law. *In re Cobble,* 592 S.W.2d, at 49. *Cobble* supports the conclusion that the decree in the case before us, insofar as it attempts to divest relator of his rights under the military retirement

2. In his dissenting opinion, Mr. Justice Powell disagrees with the holding of the majority that the fraud and breach of trust exception applies only in cases involving "a particular type of fraudulent behavior: attempts to divest the wife of any interest in her own property." *Ridgway v. Ridgway,* 454 U.S., at 68, 102 S.Ct., at 62.

851

statutes, cannot be enforced by contempt.[3] *Ex parte Hatch*, 410 S.W.2d 773 (Tex.1967), furnishes strong support for the conclusion reached in *Cobble.*

I would hold that the facts of this case present no reason for refusing to apply the preemption doctrine and that relator is entitled to be discharged from custody.

Before the court en banc.

## ON MOTION FOR REHEARING EN BANC

PER CURIAM.

In view of the court's holding in *Ex parte Chester B. Hovermale*, 636 S.W.2d 828, delivered this same day, relator Simon Y. Rodriguez's Motion For Rehearing En Banc is hereby denied by the court sitting En Banc.

---

3. The question whether the agreement between relator and his ex-wife can be enforced by re-sort to other remedies is not before us in this case.