Jerry P. BREEN, Jr., Appellant,

v.

Elizabeth Ruth BREEN, Appellee.

No. 04–83–00322–CV.

Court of Appeals of Texas,
San Antonio.

March 13, 1985.

Rehearing Denied April 23, 1985.

John G. McGarr, Jr., James N. Higdon, San Antonio, for appellant.

Roger W. Wooldridge, San Antonio, for appellee.

Before ESQUIVEL, BUTTS and DIAL, JJ.

## OPINION

DIAL, Justice.

This is an appeal from a suit to divide military retirement benefits previously awarded to the husband in a prior suit for divorce.

Jerry Breen, appellant here, and Elizabeth Breen were divorced June 8, 1982. In the divorce decree all military retirement benefits of the husband were awarded to him. This was in compliance with *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), decided June 26, 1981. The Texas Supreme Court interpreted *McCarty* as holding that the Supremacy Clause of the United States Constitution foreclosed the division of military retirement benefits under the Texas Community Property Law. *Trahan v. Trahan*, 626 S.W.2d 485, 487 (Tex.1981). Neither of the Breens appealed from the judgment of divorce.

On September 9, 1982, the President signed into law the Uniform Services Former Spouses' Protection Act, 10 U.S.C. § 1408, 96 Stat. 737 (1983), with an effective date of February 1, 1983. Our Texas Supreme Court then interpreted the Spouses' Protection Act as reversing the effect of *McCarty* and empowering Texas courts to divide military retirement pay in accordance with Texas Community Property Laws beginning with pay periods after June 25, 1981. *Cameron v. Cameron*, 641 S.W.2d 210, 212–13 (Tex.1982).

In early 1983 Elizabeth Breen initiated a suit to partition the military retirement pay based on the Spouses' Protection Act. The husband plead the affirmative defense of *res judicata*. The trial judge held that under the Spouses' Protection Act Elizabeth was entitled to a modification of the divorce decree. She was awarded thirty-five percent of the future military retired pay and attorney's fees for the trial and appeal.

■ This appeal by the husband is a case of first impression in Texas. Did the Spouses' Protection Act give Texas courts the power to modify a final judgment rendered after *McCarty* but before the Act, which judgment specifically awarded the military retirement benefits to the spouse who had been in the military? We answer the question "No," and reverse the judgment.[1]

---

**1.** Had the judgment been silent as to military    retirement, the parties would have been tenants-

Elizabeth's suit for partitioning was a collateral attack upon a final judgment. Where a divorce judgment is not appealed and appears regular on its face, the well-established Texas law is that the judgment will not be subject to a collateral attack in a subsequent suit. *Hardin v. Hardin,* 597 S.W.2d 347, 350 (Tex.1980). If the court had jurisdiction of the parties and the subject matter, the judgment would not be void regardless of how erroneous it might be. *Martin v. Sheppard,* 145 Tex. 639, 201 S.W.2d 810, 812 (1947).

Appellee cites us to cases discussing preemption under the Supremacy Clause of the United States Constitution and retroactive application of the *McCarty* decision. *Ex parte Johnson,* 591 S.W.2d 453 (Tex. 1980); *Ex parte Buckhanan,* 626 S.W.2d 65 (Tex.App.—San Antonio 1981, no writ); *Ex parte Hovermale,* 636 S.W.2d 828 (Tex. App.—San Antonio 1982, no writ); and *Trahan, supra.* These cases do not directly address whether the Spouses' Protection Act should be given retroactive effect to alter prior final divorce judgments.

*Johnson* stands for the proposition that a State court division of Veteran's Administration Disability Benefits conflicts with the clear intent of congress that the benefits be solely for the use of a disabled veteran. The State court judgment cannot be enforced because of the Supremacy Clause. No one here questions the power of federal supremacy.

The court in *Trahan* acknowledged that the *McCarty* decision controlled its disposition of the case. But the court did not apply *McCarty* retroactively to a final judgment. *Trahan* involved a final divorce, silent on retirement, followed by a partition suit which was on direct appeal when *McCarty* was announced. The Texas Supreme Court said, "No final adjudication regarding Jack Trahan's military retirement benefits, therefore, has or will be made until this Court renders its opinion. In the absence of a final adjudication, the

in-common, and the military retirement pay would have been subject to a subsequent partition action. *Harkrider v. Morales,* 686 S.W.2d

doctrine of *res judicata* is inapplicable." *Trahan, supra* at 488.

*Trahan* also cited with approval *Erspan v. Badgett,* 659 F.2d 26 (5th Cir.1981). This case involved a 1963 Texas divorce where military retirement benefits were divided between the parties 50–50. A later suit was filed by the wife in the U.S. District Court to enforce the divorce decree. The husband there contended that the federal court should reverse the divorce decree based on *McCarty* insofar as it gave military retirement benefits to his former wife. The court of appeals affirmed a verdict for the wife finding that the federal court lacked jurisdiction to reverse a final Texas divorce decree and found nothing in *McCarty* to invalidate, or otherwise render unenforceable, prior valid and subsisting State court judgments. *Id.* at 28. The court quoted from *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981), "[T]he res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case."

*Ex parte Buckhanan* involved a 1977 divorce where the husband ordered to pay part of his military retirement pay to the wife if and when it was received by him. In September of 1981 he was adjudged in contempt for not making the payments previously ordered. He contended he could not be held in contempt because of the *McCarty* case. The majority opinion stated:

Relator's application for relief by means of habeas corpus is a collateral attack upon a final judgment; *i.e.* the divorce decree of May 10, 1977 (citations omitted). Relator cannot prevail unless the district court lacked the power to award part of his military retired pay to his former spouse, ... for a final judgment that is only erroneous, and not be-

712 (Tex.App.—San Antonio, 1985); *Taggart v. Taggart,* 552 S.W.2d 422 (Tex.1977).

yond the power the court to enter is not void and cannot be attacked collaterally. *Humble Oil & Refinery Co. v. Fisher,* 152 Tex. 29, 253 S.W.2d 656 (1953); *Clayton v. Hurt,* 88 Tex. 595, 32 S.W. 876 (1895).

*Ex parte Buckhanan, supra* at 66.

The court went on to analyze the *McCarty* decision noting that the Supreme Court there found that Congress had preempted State community property laws, and found a sufficient threat of "grave harm to clear and substantial interests that State courts should be precluded from dividing the retirement pay on divorce." *Id.* at 67. The majority of the panel held the judgment void and vulnerable to collateral attack. *Id.* at 68.

In *McCarty* the United States Supreme Court did conclude that the application of community property principles to military retirement pay threatened harm to clear and substantial federal interests. The Supremacy Clause of the Constitution was held to preempt any division of military retirement benefits under Texas Community Property Law. The argument that federal interests identified in *McCarty* as necessitating the voiding of a Texas judgment in *Buckhanan,* simply does not apply to the present case. The federal interest and the concomitant preemption have been congressionally relinquished.

■ Our Texas Supreme Court has since held that *McCarty* does not operate retroactively. A final unappealed divorce granted before the *McCarty* decision should be viewed as being erroneous or voidable as opposed to void. Consequently, the rule of *res judicata* would apply. *Segrest v. Segrest,* 649 S.W.2d 610, 613 (Tex.1983). Further, the *Buckhanan* decision has been expressly overruled by this court sitting en banc. *Ex parte Hovermale, supra* at 837.

■ Appellee complains of the harshness of a result that would punish her for not appealing a case where, under then existing law, she would gain nothing by the appeal. It is pure speculation to evaluate the degree of unfairness to litigants who are not awarded a share of their spouses' military retirement benefits because their divorce became final between June 25, 1981 and February 1, 1983. Of equal difficulty would be measuring the disruption to property and contractual rights for those who are relying on the validity of judgments finalized during that period. We reiterate what this court said in *Ex parte Hovermale,*

We can perceive no area of law requiring more stability and finality than family law. Public policy demands finality of litigation in this area to preserve surviving family structure. A retroactive application would reopen old wounds and rekindle animosities long since extinguished. The results would be devastating to the litigants and to the judiciary in terms of expense, time and number of cases. In many instances it would be impossible for the court to arrive at a just and equitable redistribution of assets.

*Id.* at 836.

We hold that the husband's plea of *res judicata* should have been sustained by the trial judge. Because of this conclusion, it is unnecessary to discuss the other issues here.

The judgment is reversed and the suit is ordered dismissed.

BUTTS, Justice, dissenting.

I respectfully dissent.

I would affirm. In the dissolution of this marriage of over 35 years and 11 children, the trial court did not characterize the military benefits as either "community property" or "separate property" when it decreed that they be awarded to the husband as his separate property. Rather, the benefits were denominated as "marital property." Marital property may be either community or separate.

It becomes plain that the trial court did as many others were doing in the interim after the decision of *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). Under the law existing on the date

of this divorce, the court could neither apportion the military retirement benefits nor consider them in apportioning the community estate. *Trahan v. Trahan*, 626 S.W.2d 485, 487 (Tex.1981); *Gordon v. Gordon*, 659 S.W.2d 475, 477 (Tex.App.—Corpus Christi 1983, no writ). However, less than one year after the decree, Congress enacted the Uniformed Services Spouses' Protection Act.

The present court made a finding in its judgment that "the community interest in such military retirement benefits created by said federal law did not exist at the time of said divorce and could not have been awarded to either party, and was not considered by the Court in a division of the community property." The court then awarded the wife a sum representing 35% of the disposable retired pay disbursed to the husband each month, her share to begin May 1, 1983.

The court in *Harrell v. Harrell*, 684 S.W.2d 118 (Tex.App.—Corpus Christi 1984) stated that the wife's claim in that case to the husband's military retirement benefits cannot be barred by *res judicata* because *res judicata* applies to those issues which either were previously litigated or could have been litigated in a prior action. Here, held that court, the division of the military retirement benefits was precluded, by law, from being litigated at the time of the divorce. That is, the issue of military benefits as community property could not be litigated then. The same reasoning applies here.

As recognized by the *Harrell* court, Congress was aware of the anomaly presented by "interim" divorce decrees. S.REP. No. 97–502, U.S.CODE CONG. & AD.NEWS 1982, pp. 1555, 1596 (July 22, 1982) states:

The provisions of S.1814 reversing the effect of the *McCarty* decision are retroactive to June 26, 1981, the date on which the U.S. Supreme Court issued that decision. That is, the committee intends the legislation to restore the law to what it was when the courts were permitted to apply State divorce laws to military retired pay. Former spouses divorced in the interim period between the *McCarty* decision and the effective date of this law will have the opportunity to return to court to have their decrees modified in light of this legislation. However, nothing in the bill would mandate payments of retired pay which had been disbursed during the period between the date of the *McCarty* decision and the effective date of this legislation.

It is plain and in keeping with an equitable result that Congress intended for divorce cases to be reopened for the purpose of receiving additional evidence and argument with respect to valuation and equitable distribution of military retirement benefits. *Harrell v. Harrell, supra.*

The trial court in this case had never considered the military benefits as community property nor could the issue then be litigated. They can be an important and often substantial community asset. An asset of the marriage, which is now recognized by Congress and community property states as having the character of community property, could not be considered as a community asset by the trial court in an "interim" divorce. It is clear the trial court now may properly hear evidence to consider the same, including all aspects of the valuation and distribution of that community property asset between the parties. The trial court did that here, correctly awarding the wife's share of 35% with payments to begin after the 1983 enactment of the Spouses' Protection Act.

For these reasons the judgment should be affirmed.