Raoul HAGEN, Petitioner,

v.

Doris J. HAGEN, Respondent.

No. 07–1065.

Supreme Court of Texas.

Argued Jan. 14, 2009.

Decided May 1, 2009.

Ryan G. Anderson, McClenahan, Anderson & Stryker, P.L.L.C., Robert S. Thompson, Thompson & Thompson, San Antonio, TX, for Petitioner.

Gary A. Beahm, Law Offices of Gary A. Beahm, San Antonio, TX, for Respondent.

Justice JOHNSON delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice WAINWRIGHT, Justice GREEN, and Justice WILLETT joined.

Doris and Raoul Hagen's 1976 divorce decree awarded a percentage of Raoul's military retirement pay to Doris to be paid if, as, and when he received it. After Raoul's subsequent retirement from the Army, he was determined by the Veterans' Administration (VA) to have a service-connected disability. He then elected to be paid VA disability benefit payments, which are not subject to federal income taxes, in place of part of his military retirement payments, which are subject to income taxes. Raoul's election reduced the amount of military retirement pay he received. When Doris began receiving her percentage of the reduced Army retirement pay Raoul received, she sought enforcement and clarification of the divorce decree. The trial court determined that the decree divided only the military retirement pay being received by Raoul, it did not divide his VA disability benefits, and Doris was entitled to only a percentage of the military retirement pay. The court of appeals reversed. The appeals court held that the trial court modified the 1976 decree instead of clarifying it, and the modification was barred by res judicata principles. 283 S.W.3d 1, 2–3. We hold that the trial court correctly clarified the unambiguous original decree, and its action was not a modification barred by res judicata principles. We reverse the court of appeals' judgment and affirm the judgment of the trial court.

## I. Background

Doris and Raoul Hagen divorced in 1976. At the time of the divorce, Raoul was a member of the United States Army.

The decree awarded Doris right, title, and interest to

One-half of 18/20ths of all Army Retirement Pay or Military Retirement Pay, IF, AS AND WHEN RECEIVED, and the Petitioner RAOUL HAGEN shall be a Trustee of the One-half of 18/20ths of all Army Retirement Pay or Military Retirement Pay, for the use and benefit of DORIS J. HAGEN, and shall pay the same immediately upon each receipt of the same, to DORIS J. HAGEN.

When Raoul retired from the Army in 1992 his retirement compensation consisted solely of military retirement pay, which was subject to federal income taxes. In 2003, the VA determined Raoul had a service-connected disability rating of forty-percent. As allowed by federal statute, Raoul elected to waive part of his retirement pay and be paid VA disability in its place. *See* 38 U.S.C. § 5305. The VA disability pay is not subject to federal income taxes. *See id.* § 5301(a)(1). After Raoul made his election, payments to Doris were reduced to an amount calculated by applying the decree's formula to only the military retirement pay Raoul received.

Doris filed a combined motion for contempt, clarification of the decree, and petition for damages. She claimed that Raoul failed to comply with the 1976 decree because he failed to pay her the proper amount of his gross retirement pay, and in the alternative, she sought clarification of the decree. She also sought damages from Raoul alleging that by electing to be paid VA disability pay and waive part of his retirement pay, he breached a fiduciary duty to her and converted payments she should have received. Following a non-jury hearing, the trial court (1) ordered that "the military retirement pay now being received by Raoul Hagen shall be divided according to the formula stated in the Original Decree of Divorce," (2) found the amount subject to division under the decree did not include Raoul's disability pay, (3) awarded attorney's fees in the event of appeal, and (4) denied all other relief.

Doris appealed, and the court of appeals reversed. 283 S.W.3d 1. Relying in large part on *Berry v. Berry,* 786 S.W.2d 672 (Tex.1990) (per curiam), the court of appeals held that res judicata barred Raoul's position as a collateral attack on the divorce decree, and the Uniformed Services Former Spouses' Protection Act (USFSPA) [1] could not be applied retroactively to collaterally attack the decree. 283 S.W.3d at 2–3. We hold that the trial court's action was a permissible clarification, not an impermissible modification, of the decree.

## II. Interpreting Divorce Decrees

▇▇▇ We interpret divorce decree language as we do other judgments of courts. *Shanks v. Treadway,* 110 S.W.3d 444, 447 (Tex.2003). We construe the decree as a whole to harmonize and give effect to the entire decree. *Id.* If the decree is unambiguous, the Court must adhere to the literal language used. *Id.* If the decree is ambiguous, however, the decree is interpreted by reviewing both the decree as a whole and the record. *See Wilde v. Murchie,* 949 S.W.2d 331, 332 (Tex.1997) (per curiam). Whether a divorce decree is am-

---

1. The USFSPA provides state courts the authority to treat "disposable retired pay" as community property. *See* 10 U.S.C. § 1408(c)(1). The United States Supreme Court has held, however, that the USFSPA bars state courts from treating military retirement pay that has been waived to receive VA disability benefits as property divisible upon divorce. *Mansell v. Mansell,* 490 U.S. 581, 594–95, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).

biguous is a question of law. *Shanks,* 110 S.W.3d at 447.

▇▇▇ As with other final, unappealed judgments which are regular on their face, divorce decrees and judgments are not vulnerable to collateral attack. *Berry,* 786 S.W.2d at 673. The decree must be void, not voidable, for a collateral attack to be permitted. *Id.* Errors other than lack of jurisdiction over the parties or the subject matter render the judgment voidable and may be corrected only through a direct appeal. *Reiss v. Reiss,* 118 S.W.3d 439, 443 (Tex.2003).

▇▇▇ The Family Code provides that trial courts may enter orders of enforcement and clarification to enforce or specify more precisely a decree's property division. TEX. FAM.CODE § 9.006(a) ("[T]he court may render further orders to enforce the division of property made in the decree of divorce or annulment to assist in the implementation of or to clarify the prior order."). But courts may not "amend, modify, alter, or change the division of property" originally set out in the decree. *Id.* § 9.007(a). Attempting to obtain an order that alters or modifies a divorce decree's property division is an impermissible collateral attack. *See Reiss,* 118 S.W.3d at 442 (holding that a trial court's correct construction of a divorce decree's award "does not impermissibly 'amend, modify, alter, or change the division of property made or approved in the decree of divorce'" (quoting TEX. FAM. CODE § 9.007(a))).

### III. The Decree in Question

#### A. The Decree's Language

▇▇▇ The Hagens stipulated that their decree[2] awarded Doris "One-half of 18/20ths of all Army Retirement Pay or Military Retirement Pay, IF, AS AND WHEN RECEIVED," and directed Raoul to "pay the same immediately upon each receipt of the same, to DORIS J. HAGEN." Neither party claims the decree defined "Army Retirement Pay" or "Military Retirement Pay" to include any type of compensation or pay outside of the plain import of the words used. The decree language does not specifically reference VA disability compensation Raoul might receive, and the parties do not contend that VA benefits were referenced anywhere in the decree. We conclude the decree is unambiguous in dividing military retirement pay "if, as and when" Raoul received it. The question, then, is whether, at the time the decree was entered, military retirement pay included VA disability compensation. *See Shanks,* 110 S.W.3d at 447 (stating that we "must effectuate the order in light of the literal language used").

#### B. Retirement Pay and VA Disability Compensation

When the trial court entered the Hagens' decree on May 7, 1976, federal law provided two means by which a former service member could receive disability-related compensation: retirement pay for physical disability under Title 10 of the United States Code and VA disability compensation under Title 38. Armed Forces (Title 10), ch. 1041, 70A Stat. 91 (1956) (current version at 10 U.S.C. § 1201); Veterans' Benefits (Title 38), § 310, 72 Stat. 1119 (1958) (current version at 38 U.S.C. § 1110). Under Title 10, if a member was found to be disabled, the secretary of the applicable branch of the armed forces could "retire the member, with retired pay" computed under the statute. Armed Forces (Title 10), ch. 1041, 70A Stat. 91 (1956) (current version at 10 U.S.C.

---

**2.** A copy of the decree was attached to Doris's brief in the court of appeals.

§ 1201). Title 38, on the other hand, mentioned nothing about retirement. Veterans' Benefits (Title 38), § 310, 72 Stat. 1119 (1958) (current version at 38 U.S.C. § 1110). Instead, it compensated for "disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty." *Id.; see also* Veterans' Benefits (Title 38), § 331, 72 Stat. 1122 (1958) (current version at 38 U.S.C. § 1131) (providing VA disability compensation for peacetime injuries).

At the time the trial court entered the Hagens' decree, Texas courts recognized that only military disability pay that was an earned property right could be divided upon divorce, and VA disability compensation was not an earned property right. *Busby v. Busby,* 457 S.W.2d 551, 552–53 (Tex.1970); *Dominey v. Dominey,* 481 S.W.2d 473, 475 (Tex.Civ.App.-El Paso 1972, no writ); *Ramsey v. Ramsey,* 474 S.W.2d 939, 941 (Tex.Civ.App.-Eastland 1971, writ dism'd). In *Busby,* we did not address the question of VA disability benefits; we addressed only the two types of military retirement pay—voluntary retirement benefits and disability retirement benefits. 457 S.W.2d at 554. We held that military retirement pay—whether based upon a member's voluntary election to retire after having served the required time or whether based on retirement for disability—is not a gift or gratuity but an earned property right divisible upon divorce. *Id.* at 552. In *Ramsey,* the court of appeals applied *Busby* to VA disability benefits, holding that VA disability benefits are not an earned property right because they compensate "for personal injury or disease . . . for service-connected disability," and there is "no obligation or promise by the Veterans' Administration to remunerate" for service-connected disabilities. 474 S.W.2d at 941. VA disabili-

ty benefits were, thus, characterized differently than military retirement pay. VA disability benefits were characterized as a gratuity based upon a service-connected disability rather than an earned property right based upon years of service. *Id.; see also Milliken v. Gleason,* 332 F.2d 122, 123 (1st Cir.1964), *cert. denied,* 379 U.S. 1002, 85 S.Ct. 723, 13 L.Ed.2d 703 (1965) (holding that because the payment of VA disability compensation is at the discretion of the United States Congress, such compensation is not considered property).

### C. The Parties' Contentions

Citing *Dominey,* 481 S.W.2d 473, Doris nevertheless argues that at the time the decree was entered, Texas courts had established disability pay was an earned property right. *Dominey,* however, pertained to Navy disability retirement pay, not VA disability benefits. *Id.* at 474. In *Dominey,* the court expressly distinguished *Ramsey* and the VA benefits at issue there from military retirement benefits. *Id.* at 475. In doing so, the court held that although the retirement benefits being received by Dominey were military disability retirement benefits, they were nonetheless retirement benefits and thus property, unlike the VA disability retirement benefits at issue in *Ramsey. Id.* at 475–76.

 Relying on *Baxter v. Ruddle,* 794 S.W.2d 761, 762–63 (Tex.1990); *Berry,* 786 S.W.2d at 673; and *Jones v. Jones,* 900 S.W.2d 786, 789 (Tex.App.-San Antonio 1995, writ denied), Doris also argues Texas courts have held that ex-spouses who make a post-divorce election to waive military retirement pay for VA disability benefits are in effect collaterally attacking the decree, and such an attack is barred by res judicata principles. We do not disagree that asserting the USFSPA as justification

for violating provisions of a final divorce decree could constitute a collateral attack under some circumstances. But Raoul is not making such an assertion in this matter; rather, he relies on the specific language of the decree. And the cases Doris references do not support her position that Raoul's waiver was a collateral attack on the Hagens' decree.

In *Baxter,* the parties agreed to a property settlement and the agreed decree was not appealed. 794 S.W.2d at 762. The decree provided that the wife received

> All right, title and interest to thirty-seven and one-half percent (37 1/2%) of JAMES RUDDLE's gross U.S. Army retirement and/or disability benefits and/or V.A. disability benefits (including thirty-seven and one-half percent (37 1/2%) of all increases therein due to the cost of living) if, as and when received.

*Id.* Ruddle remained in the service after the divorce, so his retirement pay increased over the amount he would have received had he retired at the time of divorce. *Id.* He did not comply with the decree by paying his former wife, Judith Ann Baxter, the specified percentage of his actual gross retirement pay. *Id.* In considering Baxter's Motion for Contempt and Arrearage Judgment, the trial court determined Baxter was entitled to a percentage of benefits valued as of the time of the divorce. *Id.* This Court held that the unappealed, agreed divorce decree unambiguously provided for Baxter to receive thirty-seven and one-half percent of the *gross* retirement benefits received by Ruddle, including post-divorce increases; the parties agreed to the method of apportionment and their agreement should be enforced even if the court could not have ordered the division except for the parties' agreement; the decree was binding on the parties; and the trial court's determination in contravention to the decree was barred

by res judicata. *Id.* at 762–63. Unlike the Hagens' decree, the agreed, unappealed decree in *Baxter* specifically referenced and divided gross retirement benefits, VA disability benefits, and all cost of living increases. *Id.* at 762. And, unlike Raoul's situation, in which he seeks to *enforce* the language of the decree, Ruddle attempted to effect a substantive *change* to a prior final decree's express provisions.

In *Berry,* relied on in large part by the court of appeals in this case, the parties entered into an agreement and consent decree. 786 S.W.2d at 673. The decree specified the wife would receive "twenty-five percent of ... *gross* Air Force disability retirement pay." *Berry v. Berry,* 780 S.W.2d 846, 847 (Tex.App.-Dallas 1989), *rev'd per curiam,* 786 S.W.2d 672 (Tex.1990) (emphasis added). The husband later elected to accept VA disability benefits, and his retirement pay was reduced accordingly. *Berry,* 786 S.W.2d at 673. The wife began receiving a percentage of the reduced retirement pay and sought to enforce the decree's literal language that awarded her a portion of the husband's gross retirement pay. *Id.* At the enforcement hearing, the wife introduced a statement from the Air Force showing the husband's gross Air Force disability retirement pay had not changed, but the VA disability benefits were credited against the retirement pay as a deduction and reduced the gross pay to a net amount:

> As the statement clearly indicates, Husband received *gross* pay in the amount of $2,422 with a VA waiver of $1,355 and an A.L.M.T. reduction of $9. After subtracting this waiver and reduction, Husband was left with a *net* pay of $1,058.

*Berry,* 780 S.W.2d at 849. The trial court held the wife was entitled to twenty-five percent of the husband's net Air Force disability pay of $1,058. *Id.* at 847–48.

The court of appeals affirmed. *Id.* at 851. This Court noted that the original decree provided for the wife to receive twenty-five percent of the husband's *gross* pay, not *net* pay; the decree was final; the decree was not void; and the decree could not be substantively altered by using the USFS-PA to collaterally attack it:

> This court has held that, as with other final, unappealed judgments which are regular upon their face, divorce judgments are not vulnerable to collateral attack. Although a final judgment may be erroneous or voidable, it is not void and thus subject to collateral attack if the court had jurisdiction of the parties and the subject matter. Because the final judgment is voidable as opposed to void, the rule of res judicata would apply. Under these cases, the subsequent adoption of the USFSPA cannot be used to collaterally attack the Berrys' final divorce decree.

786 S.W.2d at 673 (citations omitted). As a result, the Court enforced the divorce decree according to its literal language that awarded the wife a percentage of what she proved was the husband's gross retirement pay. *See id.* at 674.

And in *Jones*, 900 S.W.2d 786, the consent decree entered pursuant to an agreement between the parties provided as follows:

> [Wife is awarded] if, as, and when retirement is received by DONALD J. JONES, a monthly amount equal to twenty-five percent (25%) of that monthly amount that a retired Major with 20 years service will receive on the date DONALD J. JONES begins to receive his retirement, with the same percentage of any and all costs of living related increases to which DONALD J. JONES shall become entitled for the period beginning on the date of retirement and

ending on the death of DONALD J. JONES.

*Id.* at 787. Donald Jones later retired, accepted a disability retirement amount in lieu of part of his regular retirement pay, and sought to preclude payment of any of the disability retirement pay to his former wife based on the USFSPA. *Id.* The trial court enforced the decree as written. *Id.* In affirming, the court of appeals held that Jones's attempt to apply the USFSPA to alter the substantive provisions of the decree was an attempt to avoid the effect of the unappealed decree and was thus a prohibited collateral attack. *Id.* at 787–88. Similar to the outcome in *Berry*, the end result was that the decree was enforced according to its original language. *See id.*

 In *Baxter, Berry,* and *Jones,* there were attempts to, in effect, modify or change a prior final decree's provisions. Here, Raoul does not attempt to attack, change, or alter the decree; he seeks enforcement according to its literal language. If a trial court order does not modify or amend the substantive division of property set out in a final decree, then the court merely construes the decree, and its order is properly classified as a clarification or enforcement order. *See* TEX. FAM.CODE §§ 9.006–.007. Only an attempt to judicially alter or change the substantive provisions of a final decree constitutes a prohibited collateral attack. *See Reiss,* 118 S.W.3d at 442. The trial court's clarification order in this case did not change the decree's substantive division of property and thus did not permit a collateral attack on the decree.

Doris also contends the decree awarded her a portion of Raoul's "gross" or "total" military pay because courts have held that language similar to language used in the Hagens' decree encompasses all types of military pay, including VA disability benefits. Her argument fails. First, "military

pay" is different from and does not include VA disability pay as we have discussed above. Next, the literal language employed in this decree is unambiguous, does not specify division of gross military pay, and does not specify a division of VA disability benefits. *See Shanks,* 110 S.W.3d at 447. And, none of the cases Doris references—*Jones,* 900 S.W.2d 786; *Gallegos v. Gallegos,* 788 S.W.2d 158 (Tex.App.-San Antonio 1990, no writ); or *Ex parte Hovermale,* 636 S.W.2d 828 (Tex.App.-San Antonio 1982, no writ)—support her position. In *Jones,* the court of appeals did not consider whether "military retirement pay" means "gross" military pay. *See* 900 S.W.2d 786. It enforced a decree that provided the wife was to receive an amount set by formula. *Id.* at 787–88 (wife was awarded "a monthly amount equal to twenty-five percent (25%) of that monthly amount that a retired Major with 20 years service will receive on the date DONALD J. JONES begins to receive his retirement," together with cost of living increases). In *Hovermale* and *Gallegos,* the decrees divided "gross military retirement pay," and because the decrees included the term "gross," the courts did not address whether a decree not including that term has the same meaning. *See Hovermale,* 636 S.W.2d at 829 (noting the final decree "requir[ed] relator to pay to his former wife a portion of his gross monthly military retirement pay, based on a formula set out in the decree of divorce"); *Gallegos,* 788 S.W.2d at 160 (the decree provided "IT IS ORDERED AND DECREED that [appellee] shall have judgment against and recover from [appellant] twenty-one and one-half percent (21.5%) of the gross present and future military retirement pay received each month by [appellant]").

## IV. Response to the Dissent

The dissent says our holding today conflicts with *Berry* because the Hagens' decree is similar to the *Berry* decree in that neither specifically references VA disability compensation, yet we held the *Berry* decree divided VA disability while we hold the Hagen decree does not. With due respect, the dissent is mistaken. Neither the *Berry* decree nor the Hagens' decree divided VA disability compensation, nor did we hold in *Berry* that the decree there did so.

In *Berry,* the original decree specified the husband was to instruct a bank to "disburse to Wife monthly, as received, at a bank or other address of her choice, twenty-five percent (25%) of said Retirement Pay *computed on the gross amount thereof before any deductions.*" *Berry,* 780 S.W.2d at 847 (emphasis added). The decree did not limit or specify the type or amount of deductions that could be taken from the retirement pay. Under the language of the decree, the type or amount of deductions did not matter because the wife was to be paid an amount computed on the husband's gross retirement pay before deductions. *Id.* The decree's language made it clear the parties and the court contemplated the possibility that in the future some types of deductions or reductions might be applied to the gross retirement pay. They took that possibility into account and provided for it. *Id.* at 847–49. The husband later attempted to collaterally attack the final, unappealed decree. 786 S.W.2d at 673.

Contrary to the dissent's position, this Court did not hold that the decree divided VA disability benefits. The Court held that the husband was barred from using the USFSPA to collaterally attack the original decree, noting (1) the unappealed, final decree contained a formula calculating the wife's entitlement based on the "gross amount [of retirement pay] before deductions" language, and (2) a copy of

one of the husband's Air Force Retiree Account Statements showed the term "gross" pay was used to indicate monthly pay before any deductions. *Id.* at 673 & n. 1.

In the case before us, the Hagens' original decree did not award Doris amounts "calculated on" Raoul's gross, or even total, retirement pay before deductions, as the decree in *Berry* did. The Hagens' decree plainly entitled Doris only to part of the Army or military retirement pay Raoul received, if, as, and when he received it. As discussed previously, such military retirement pay did not include VA disability benefits. Thus, the trial court in this case did not modify the Hagens' decree; it only clarified that the decree did not divide VA disability pay that was or might become payable to Raoul because of disability resulting from service-connected personal injury or disease. The trial court in this case did not allow an impermissible collateral attack on the decree, just as this Court did not allow an impermissible collateral attack on the decree in *Berry*. *See id.* at 673; *see also* TEX. FAM.CODE § 9.007(a) ("A court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment."); BLACK'S LAW DICTIONARY 278 (8th ed.2004) (defining "collateral attack" as "[a]n attack on a judgment in a proceeding other than a direct appeal").

Although the dissent urges that the Hagens' decree is void, neither of the parties have taken that position. To the contrary, Doris has asserted the decree is *not* void. Of course, whether a judgment or decree is void does not depend on what the parties say; it depends on legal principles. *See Brazzel v. Murray,* 481 S.W.2d 801, 803 (Tex.1972) (quoting *Murchison v. White,* 54 Tex. 78 (1880)) ("A void act is one entirely null within itself, not binding on either party, and

which is not susceptible of ratification or confirmation. Its nullity cannot be waived."). But in this case, the trial court in 1976 had jurisdiction over the parties and the subject matter, and it did not act outside its capacity as a court. *See Reiss v. Reiss,* 118 S.W.3d 439, 443 (Tex.2003). The trial court did not issue an advisory opinion about VA disability benefits Raoul might later receive due to a disability emanating from his military service; it did not address them at all.

The dissent recognizes that divorce decrees divide future retirement benefits that are contingent on continued future employment but contrasts VA disability benefits from that type of compensation because "payments are not 'earned' during marriage and 'are not property.'" We do not disagree with the dissent's statement, but it is not relevant here because the Hagens' decree simply did not divide Raoul's VA disability pay. It divided his Army or military retirement pay if, as, and when he received it.

Finally, the dissent says that because this Court held in *Berry* that a decree dividing military retirement pay also divided VA disability pay that arose later, we should overrule *Berry* and remand the case for Doris to reassert her claims for conversion and breach of fiduciary duty because she relied on *Berry*. We decline to do so for at least three reasons. First, as we have explained above, we do not agree that our decision in this case conflicts with *Berry* and we decline to overrule *Berry*. Second, Doris did not—as the dissent claims—rely on *Berry* in the trial court and court of appeals for the proposition that a decree dividing military retirement pay also divides VA disability pay arising later. In the trial court, the court of appeals, and this Court, Doris cited *Berry* only for the proposition that the Hagens' decree was final and could not be

modified by the trial court. She did not include *Berry* in her brief of authorities to the trial court, nor did her counsel mention it at the hearing on her motion for contempt except one time in connection with res judicata:

> [This] case is protected by res judicata. No one ever appealed this case. And there are many, many cases on that. Two cases that I haven't included in my brief, one is Berry versus Berry, which is a Supreme Court of Texas case.

In her briefs at the court of appeals and this Court, Doris again cited *Berry* only once, and the reference was in regard to the res judicata issue:

> A trial court may not amend, modify, alter or change the division of property made or approved in a decree of divorce or annulment. It is limited to an order to assist in the implementation of or to clarify the prior order. . . . *Berry v. Berry*, 786 S.W.2d 672 (Tex.1990).

Third, Doris asserted claims against Raoul for breach of fiduciary duty and conversion in the trial court. The claims were denied, and Doris has not presented the issues on appeal. The issue Doris pursued in the court of appeals was whether the trial court's order modified or clarified the Hagens' original decree.

## V. Conclusion

The Hagens' 1976 divorce decree is unambiguous. It provides Doris is to receive a percentage of the Army Retirement Pay or Military Retirement Pay Raoul receives. It does not provide she is to receive payments calculated on any other basis, or that she is to receive part of his VA disability compensation. The trial court's order was a proper clarification of, and not an impermissible modification of, the decree.

On the surface, it appears that Raoul's election to receive VA benefits has worked an inequity on Doris. But the language used in divorce decrees is important, and we must presume the divorce court chose it carefully, especially given the frequency of attempts to enforce decrees—as was the case here—through contempt orders. The meager record before us shows that Doris did not appeal from the 1976 decree when it was entered over thirty years ago. There is no indication she did not then have full opportunity to present her legal and equitable positions, present her proof, and request the decree she wanted the trial court to enter.

We conclude Doris has had full opportunity to seek relief. The record does not justify a remand for further litigation of the issues. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

Justice BRISTER filed a dissenting opinion, in which Justice O'NEILL and Justice MEDINA joined.

Justice BRISTER, joined by Justice O'NEILL and Justice MEDINA, dissenting.

The Court says this divorce decree did not divide VA disability pay, and even if it did it is binding because it was voidable rather than void. I disagree on both counts.

I would also try a little harder to find an alternative to today's judgment, which allows an ex-husband to cut off a community asset awarded to his ex-wife. We should remand for Doris Hagen to pursue further proceedings; because the Court instead renders judgment against her, I respectfully dissent.

## I. Did This Decree Divide VA Disability Pay?

Military retirement pay and Veterans Administration disability pay have differ-

ent purposes and pedigrees.[1] Were we writing on a clean slate, I might agree that this decree dividing retirement pay did not divide VA disability pay. But we are not writing on a clean slate.

This Court held in 1990 in *Berry v. Berry* that a decree dividing military retirement pay *did* divide VA disability pay that arose later.[2] In *Berry*, we required a veteran to keep paying 25 percent of his total benefits to his ex-wife even after most of those benefits were converted to VA disability pay. The Court says that decree did not divide VA disability pay, but merely required that "the wife was to be paid an amount computed on the husband's gross retirement pay before deductions."[3] That is not what we said at the time, explicitly stating that the lower courts erred by "refusing to enforce the final divorce decree with respect to Veterans Administration disability benefits."[4] And to avoid admitting that *Berry* divided VA disability pay, the Court reinterprets it as a provision for alimony, which Texas courts cannot award.[5] The *Berry* decree effectively divided VA disability pay, no matter how hard the Court tries to deny it.

The decree in *Berry* divided "Air Force disability retirement pay" while the decree here divided "Army Retirement Pay,"[6] but "disability retirement pay" is defined as "retirement pay,"[7] and the statute providing for it applies to all branches of the armed forces.[8] Because both decrees divided "retirement pay," it is hard to see why the decree in *Berry* divided VA disability pay but the decree here did not. Indeed, that was the precise conclusion of the court of appeals.[9]

The Court says the decree here is different because it did not divide "gross" retirement pay, as the *Berry* decree did. But this decree awarded Doris Hagen a portion of "*all* Army Retirement Pay." How can "all retirement pay" mean something less than "gross retirement pay"? Does "all

1. *See McCarty v. McCarty*, 453 U.S. 210, 211–12, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981).

2. 786 S.W.2d 672, 674 (Tex.1990).

3. 283 S.W.3d 1, 1.

4. *Id.* at 672.

5. *See Stubbe v. Stubbe*, 733 S.W.2d 132, 133 (Tex.1987) ("Court ordered alimony, available in most other jurisdictions, is not available in Texas as it contravenes Texas public policy.").

6. The decree here awarded Doris Hagen:
 One-half of 18/20ths of all Army Retirement Pay or Military Retirement Pay, IF, AS, AND WHEN RECEIVED, and the Petitioner RAOUL HAGEN shall be a Trustee of the One-half of 18/20ths of all Army Retirement Pay or Military Retirement Pay, for the use and benefit of DORIS J. HAGEN, and shall pay the same immediately upon each receipt of the same, to DORIS J. HAGEN.
 The decree in *Berry v. Berry* provided:
 The parties agree that husband's Air Force Disability Pay ("Retirement Pay") is Com-

munity Property of husband and wife.... Husband shall ... disburse to Wife monthly, as received, at a bank or other address of her choice, twenty-five percent (25%) of said Retirement Pay computed on the gross amount thereof before any deductions.

7. *See* 10 U.S.C. § 1201(a) ("***Retirement.***—Upon a determination by the Secretary concerned that a member described in subsection (c) is unfit to perform the duties of the member's office, grade, rank, or rating because of physical *disability* incurred while entitled to basic pay or while absent as described in subsection (c)(3), the Secretary may *retire* the member, with *retired pay* computed under section 1401 of this title....") (emphasis added); *see also Ex parte Burson*, 615 S.W.2d 192, 193 (Tex.1981) (referring to "Air Force disability retirement pay" as "military retirement pay"); *Busby v. Busby*, 457 S.W.2d 551, 554 (Tex.1970) (holding military disability pay should be treated as military retirement pay).

8. *See* 10 U.S.C. § 1201(c).

9. 283 S.W.3d 1, 3.

income" mean less than "gross income"? Or "all sales" less than "gross sales"? The Court's hypertechnical distinction between "all" and "gross" may lead to problems in many areas of the law.

The Court finds it significant that in *Berry* a monthly pay stub included figures for gross retirement pay and then a deduction for VA disability pay. But this observation depends on an anachronism: the statute deducting VA disability pay from gross retirement pay was enacted in 1982,[10] several years *after* the divorce decrees in *Berry* and this case. Whatever was meant by "gross" or "all" retirement pay in either decree, it did not include a statutory construct that existed only in the future.

At the time these decrees were signed, any military retirement pay (whether standard retirement pay or disability retirement pay) had to be waived dollar-for-dollar to receive VA disability pay.[11] If the *Berry* decree dividing retirement pay included amounts later waived to receive VA disability pay, then so did this decree. We must either follow *Berry* or overrule it. For the reasons stated next, we should overrule it.

## II. Can a Court Divide Disability Pay Before Disability Occurs?

Federal law prohibits division of VA disability pay upon divorce.[12] But because we construed the *Berry* decree to apply to VA disability pay and that decree was not appealed, we held the decree could not be

collaterally attacked as it was voidable rather than void.[13]

It is generally true that a divorce decree cannot be collaterally attacked on the ground that it improperly divided community property.[14] But any decree can be collaterally attacked if the court issuing it had no jurisdiction.[15] The decree in *Berry* falls under both rules.

Many cases discuss whether a judgment is void or voidable, but in fact a judgment can be both. If a plaintiff with no standing obtains a judgment for negligent infliction of emotional distress, the decree is both voidable (negligent infliction is not a valid claim) and void (standing is jurisdictional). If a defendant fails to appeal a default judgment by a court with neither personal jurisdiction nor proper venue, the judgment is again both void and voidable. If an appellate court issues an advisory opinion that misinterprets the law, its judgment is both void and voidable. In all these cases, the judgment can be collaterally attacked because it is void, even if the ground that renders it voidable cannot be reached.

I agree the *Berry* decree was voidable because it divided VA disability pay in violation of federal law. But it was also void because it divided VA disability pay before any disability existed, or anyone knew whether one ever would. Res judicata applies to issues that "were raised or could have been raised in the first ac-

---

**10.** *See* Uniformed Services Former Spouses' Protection Act, Pub.L. No. 97–252, 96 Stat. 730 (1982).

**11.** *See* Veterans Benefits Act, Pub.L. No. 85–857, 72 Stat. 1231 (195 8) (codified at 38 U.S.C. § 5305).

**12.** 38 U.S.C. § 5301(a)(1); *McCarty v. McCarty*, 453 U.S. 210, 211–12, 101 S.Ct. 2728, 69

L.Ed.2d 589 (1981); *Ex Parte Burson*, 615 S.W.2d 192, 196 (Tex.1981).

**13.** 786 S.W.2d 672, 673.

**14.** *Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003); *Baxter v. Ruddle*, 794 S.W.2d 761, 762–63 (Tex.1990).

**15.** *Reiss*, 118 S.W.3d at 443.

tion." [16] When a veteran's disability arises 27 years after divorce (as was the case here), it could not possibly have been raised in the divorce because no one knew then if any disability would ever occur, much less when it would begin or how extensive it would be.

Courts cannot decide hypothetical claims. [17] Doing so violates the constitutional provisions for separation of powers and open courts. [18] A judgment dividing VA disability pay when no disability has yet occurred is void under the rules of both ripeness and standing. [19] Ripeness prohibits suits involving "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." [20] Standing prohibits suits by those who are not personally aggrieved [21] as would be true when a person's ex-spouse suffers a disability after divorce. [22] Both ripeness and standing are components of subject-matter jurisdiction, [23] and thus can be raised in a collateral attack. [24]

Of course, divorce decrees often divide future retirement benefits if, as, and when received, including military retirement pay. [25] But pensions are a form of deferred compensation earned during marriage, and at the time of divorce constitute a contingent interest in property. [26] By contrast, post-divorce VA disability payments are not "earned" during marriage and "are not property." [27]

"Neither this Court, nor the trial court, has the power to counsel a legal conclusion on a hypothetical or contingent set of facts." [28] At the time of the divorce here and in *Berry*, the prerequisite for VA disability pay—a disability—was hypothetical. Other branches of government may decree that disability pay arising after divorce should be shared with a former spouse, but

16. *Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78, 86 (Tex.2008).

17. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex.2008).

18. *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex.2004); *Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001); *see* Tex. Const. art. I, § 13 & art. II, § 1.

19. *See Inman*, 252 S.W.3d at 304–05 (noting that, for standing, the claimant's alleged injury must not be "hypothetical"); *McAllen Med. Ctr., Inc. v. Cortez*, 66 S.W.3d 227, 232 (Tex. 2001) ("The ripeness doctrine avoids premature adjudication on a hypothetical set of facts.").

20. *Perry v. Del Rio*, 66 S.W.3d 239, 250 (Tex. 2001) (quoting 13 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3532, at 104 (2001 Supp.)); *see also Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851–52 (Tex.2000).

21. *Inman*, 252 S.W.3d at 304–05.

22. *Cf.* Tex. Fam.Code § 3.101 ("Each spouse has the sole management, control, and disposition of that spouse's separate property."); *Chu v. Hong*, 249 S.W.3d 441, 444 (Tex.2008) (stating that "personal injury claims are the separate property of each spouse").

23. *McAllen Med. Ctr.*, 66 S.W.3d at 231 (noting "the constitutional requirement that the court of appeals have subject-matter jurisdiction, and both ripeness and standing are necessary components of that jurisdiction").

24. *See Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex.2008); *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex.2000).

25. *Shanks v. Treadway*, 110 S.W.3d 444, 446 (Tex.2003); *Cearley v. Cearley*, 544 S.W.2d 661, 663 (Tex.1976).

26. *Cearley*, 544 S.W.2d at 665.

27. *Ex parte Burson*, 615 S.W.2d 192, 194 (Tex.1981) ("Veterans Administration benefits . . . are not property."); *see* 38 U.S.C. § 5301.

28. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 853 (Tex.2000).

the courts cannot.[29] Accordingly, *Berry* incorrectly held that such a decree was voidable rather than void.

### III. Can Waived Retirement Pay Be Recovered?

In most states, a divorce court can order alimony or child support paid from VA disability benefits.[30] But in community-property states like Texas (as already noted), a divorce court cannot divide VA disability pay because it is not assignable property.[31] This problem can be mitigated when disability occurs *before* divorce ·by considering VA disability pay in dividing all the other property between the spouses in a manner that is just and right.[32] But when disability occurs *after* divorce, a just-and-right division of retirement benefits may be rendered neither just nor right by allowing one party to cut off the other's share of those benefits.[33]

"In most states, if a former service member unilaterally waives retired pay to receive VA disability pay, the courts will not stand idly by."[34] Surely that should be the rule in Texas too.

The decree here did not just award Doris part of Raoul's retirement pay; it also appointed him trustee of those funds for her use and benefit. As a result, it is hard to see how his decision to waive those funds did not breach his fiduciary duty as her trustee.[35] Nor is it clear why converting retirement pay to VA disability pay did not constitute conversion; while "money can be converted only if it is specifically identified and held in trust,"[36] this money was.

Of course, any judgment against Raoul could not be collected from his disability payments because they are exempt.[37] And

---

29. *See, e.g., Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998) ("Under the separation of powers doctrine, courts are without jurisdiction to issue advisory opinions because such is the function of the executive department, not the judiciary.").

30. *See Rose v. Rose,* 481 U.S. 619, 630–32, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987); *Murphy v. Murphy,* 302 Ark. 157, 787 S.W.2d 684, 685 (1990); *Allen v. Allen,* 650 So.2d 1019, 1020 (Fla.Dist.Ct.App.1994); *In re Marriage of Anderson,* 522 N.W.2d 99, 102 (Iowa Ct.App. 1994); *Wingard v. Wingard,* 11 Pa. D. & C.4th 343, 345 (1991).

31. *See* 38 U.S.C. § 5301(a)(1).

32. *See* TEX. FAM.CODE § 7.001; *U.S. v. Stelter,* 567 S.W.2d 797, 798 (Tex.1978); *Limbaugh v. Limbaugh,* 71 S.W.3d 1, 17 n. 14 (Tex.App.-Waco 2002, no pet.); *Rothwell v. Rothwell,* 775 S.W.2d 888, 892 (Tex.App.-El Paso 1989, no writ); *see also* Maj. Mary J. Bradley, *Calling for a Truce on the Military Divorce Battlefield: A Proposal to Amend the USFSPA,* 168 MIL. L.REV. 40, 116 (2001) (noting that when disability exists at time of divorce, "courts grant former spouses a form of support or property in lieu of what their share of the

retired pay would have been if not for the disability determination").

33. *See* Michael T. Flannery, *Military Disability Election and the Distribution of Marital Property Upon Divorce,* 56 CATH. U.L.REV. 297, 302 (2007); Brad M. LaMorgese & Robert E. Holmes, Jr., *Division of Retirement Benefits: The Impact of Federal Preemption on Women in Texas,* 7 TEX. J. WOMEN & L. 207, 226 (1998) (describing this as "yet another inequity women in Texas are asked to bear").

34. Bradley, *supra* note 32, at 116.

35. TEX. PROP.CODE § 114.001; *see, e.g., Brownsville–Valley Reg'l Med. Ctr., Inc. v. Gamez,* 894 S.W.2d 753, 756 (Tex.1995); *Henry I. Siegel Co., Inc. v. Holliday,* 663 S.W.2d 824, 831 (Tex.1984); *Hamm v. Drew,* 83 Tex. 77, 18 S.W. 434, 436 (1892); *Votzmeyer v. Votzmeyer,* 964 S.W.2d 315, 325 (Tex.App.-Corpus Christi 1998, no pet.); *Ex parte Rodriguez,* 636 S.W.2d 844, 846 (Tex.App.-San Antonio 1981, no writ).

36. *Chu v. Hong,* 249 S.W.3d 441, 444 (Tex. 2008).

37. 38 U.S.C. § 5301(a)(1).

they remain exempt after receipt so long as they are held in a form "readily available as needed for support and maintenance ... and have not been converted into permanent investments."[38] But if Raoul has other assets or funds from which such a judgment could be collected, there is no reason to prevent Doris from trying.[39]

While Doris pleaded conversion and breach of fiduciary duty in the trial court, she briefed neither when she appealed the trial court's dismissal of her case. But she was relying on the continued validity of *Berry v. Berry*, under which she should prevail unless we overrule it. "When, as here, a party presents her case in reliance on precedent that has been recently overruled, remand is appropriate."[40] Accordingly, rather than rendering judgment against Doris, I would overrule *Berry* and remand in the interest of justice for her to pursue alternate means.[41]

---

**38.** *Porter v. Aetna Cas. & Sur. Co.*, 370 U.S. 159, 162, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962).

**39.** *See* Bradley, *supra* note 32, at 117–22.

**40.** *Twyman v. Twyman*, 855 S.W.2d 619, 626 (Tex.1993).

