# IN THE SUPREME COURT OF TEXAS

════════════
No. 14-0638
════════════

PRESTON A. OCHSNER, PETITIONER,

v.

VICTORIA V. OCHSNER, RESPONDENT

════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS
════════════════════════════════════════════════

JUSTICE JOHNSON, joined by JUSTICE BOYD, dissenting.

This case is enshrouded in family law trappings, but at bottom it is about construing a court judgment—in this instance a divorce decree. In construing decrees we apply the same rules that apply in construing other court judgments—or at least we have said that we do. *Hagen v. Hagen*, 282 S.W.3d 899, 901 (Tex. 2009). These rules include construing the decree or judgment as a whole, harmonizing and giving effect to all its language, and if the decree or judgment is unambiguous, adhering to and enforcing its language. *Id.* In my view, the Court does not follow these principles. As a result, there are no consequences to Preston Ochsner for failing to comply with unambiguous child-support-payment provisions in the unchallenged, underlying 2001 decree. The Court's decision will at least colorably legitimize claims by other child-support obligors to the effect that benefits they have provided for their children qualify as support payments, even though

the governing decrees unambiguously provide otherwise. And just as happened here, enforcement hearings regarding those claims will almost invariably be swearing contests with emotional overlays in which the obligor testifies that the obligee agreed the benefits provided would be in lieu of or count against child-support payments ordered to be paid to the obligee, but the obligee testifies that there was no such agreement. Those results cannot possibly be in the best interests of the children, obligors, or obligees involved. For the reasons set out herein, I respectfully dissent. I also join JUSTICE BOYD's well reasoned dissent.

Preston Ochsner was petitioner in the divorce action underlying this appeal. Represented by counsel, he approved the Final Decree of Divorce as to form and content. Victoria Ochsner, the respondent and a non-lawyer acting *pro se* (she later attended law school and became licensed to practice law), likewise approved it as to form and content. The decree is forty-one pages long, detailed, and appoints the Ochsners as joint managing conservators of their then-three-year-old child. It contains initialed handwritten interlineations, indicating that the parties were careful to assure the decree reflected their agreement and intent. The decree authorizes some flexibility: certain provisions can be modified without court approval if the parties are in agreement. For example, it provides that

- the child is not to be removed from Harris County for the purpose of changing the primary residence of the child unless the decree is modified by further order of the court of continuing jurisdiction, "*or by written agreement signed by the parties and filed with the Court*";
- Preston and Victoria have discrete periods of possession of the child, with the added specification in three different places that each will also have possession "[*a*]*t all times mutually agreeable between the parties.*"

2

(emphasis added).  But the decree does not extend flexibility to the provisions requiring Preston to make child-support payments.  As to those provisions, the decree clearly spells out what is child support, how and when it is to be paid, to whom it is to be paid, and the circumstances under which the support payments will change or terminate.  Considered in context with the above-referenced provisions, and as discussed below, the decree prohibits the parties from modifying the support payment terms by agreement because it specifically says they may only be changed by court order.

Three sections of the decree are particularly relevant to the issue before us: **Child Support**, **Health Care**, and **Payment of Day Care**.  The section entitled **Child Support** orders that Preston "*shall pay to VICTORIA V. OCHSNER* child support in the amount of $240.00 per month." (emphasis added).  The support is ordered to be paid in installments of $120.00 each on the first and fifteenth of the month, until the earliest of one of the following events:

> the child reaches the age of 18 years, provided that, if the child is fully enrolled in an accredited secondary school in a program leading toward a high school diploma, the periodic child support payments shall continue to be due and paid until the end of the school year in which the child graduates;
>
> the child marries;
>
> the child dies;
>
> the child's disabilities are otherwise removed for general purposes;
>
> the child is otherwise emancipated;
>
> the child no longer attends Enron Kid's Center day care; or
>
> further Order modifying this child support.

The next paragraph in the Child Support section addresses what was to happen after the child no longer attended Enron Kid's Center. It specifies that Preston then "*shall pay to VICTORIA V. OCHSNER* child support of $800.00 per month" (emphasis added) in installments of $400.00 on the first and fifteenth of the month until the earliest of one of the events on a list that mirrors the above list, except the provision as to Enron Kid's Center is omitted.

The Child Support section provides that if Preston becomes delinquent in his child support, notice may be given to his employer to withhold the support from his earnings. The decree defines delinquency as "when child support is in arrears in an amount equal to or greater than the total support due for one (1) month." It provides that amounts withheld by the employer from Preston's earnings and paid by the employer according to court order "shall constitute a *credit* against the child-support obligation," (emphasis added) not that they shall count "as" child support. Under the Family Code, there is a difference between the two. *See* TEX. FAM. CODE §§ 157.008-.009, .263(b-1). Further, the Child Support section of the decree does not allow the parties to modify its provisions either by (1) filing a written agreement signed by the parties with the court, as the decree authorizes for moving the child from Harris County, or (2) mutual agreement of the parties, as the decree authorizes as to possession of the child. Nor does it provide that payments not specified in the decree but nevertheless made for the benefit of the child or to discharge Victoria's obligations are either child support or allowable as a credit or offset against the periodic child-support payments to be made to Victoria. The decree simply and unambiguously provides that periodic child support in specified amounts is to be paid on specified days of each month *to* Victoria—not to Victoria *or someone to whom she is obligated for the child's education expenses*—until one of a list of

4

contingencies occurs.  None of the contingencies happened during the time period after the child no longer attended Enron Kid's Center.

Next, the section of the decree entitled **Health Insurance** sets out that "as additional child support," Preston is to "provide and pay for health insurance for the child for as long as child support is payable under this Order."  That section is not at issue here, but, notably, it specifies that the provision of health insurance for the child is child support.

Finally, the section of the decree entitled **Payment of Day Care** orders Preston to "pay $563.00 per month to the Enron Kid's Center day care facility" as long as the child is enrolled there. The payments are not classified as child support, and the decree does not (1) contain language implying that the payments are child support, (2) allow the payments to offset or be credited toward child-support payments to be made to Victoria, or (3) reference daycare, tuition, or other education expenses incurred after the child no longer attended Enron Kid's Center.

Thus, two—and only two—obligations imposed on Preston by the decree are classified as child support: the specified payments to Victoria and health insurance.  Preston was ordered to pay the child's tuition at Enron Kid's Center and did so, as well as commendably paying other educational expenses for the child's benefit that he was not ordered to pay and that were not classified as child support by the decree.  And whether they were or were not so classified is important, both under the decree and the Family Code.  The Court's basis for saying the expenditures were child support is that it is "counter-intuitive" to read the decree as not so classifying them.  *Ante* at ___. The Court is relegated to "counter-intuitive" as its basis for deciding that the decree includes those payments because the plain language of the decree does not do so; as noted above, it does not

5

even reference them. The Court's position is in direct contravention of the decree's language specifying what is child support—and necessarily by omission what is not—and its directing that specified semi-monthly child-support payments "shall" be made "to Victoria" until further Order of the court or occurrence of one of the other contingencies listed. Further, "counter-intuitive" is not the proper standard for reviewing and interpreting a decree. *See Hagen*, 282 S.W.3d at 901 ("If the decree is unambiguous, the Court must adhere to the literal language used."). Rather, it is language the Court uses to justify its (1) failing to properly apply a well-established standard of review, (2) countermanding specific language in the 2001 decree contrary to established precedent, and (3) writing around detailed provisions of the Family Code. *See*, *e.g.*, *post* at ___ (Boyd, J., dissenting).

The Family Code precludes a trial court's reducing or modifying the amount of child-support arrearages when calculating and confirming the amount, but permits it to consider certain specific counterclaims, offsets, and credits. TEX. FAM. CODE §§ 157.008-.009, .263(b-1). As the Court notes, none of the allowable counterclaims, offsets, or credits apply here. *Ante* at ___. The Code protects—or at least tries to protect—support obligations in court orders from retroactive reduction and counterclaims, offsets, and credits other than those specified by the Code. Part of that protection is providing for affirmative, automatic relief to a support obligee: "A child support payment not timely made constitutes a final judgment for the amount due and owing, including interest as provided in this chapter." TEX. FAM. CODE § 157.261(a). Despite those statutory provisions, the validity of which are not challenged, the Court says that "in a child support enforcement action, a trial court may consider the various payments made by the obligor, regardless of what precise manner an earlier court—presiding over a distinct proceeding—specified in the child support order."

6

*Ante* at ___.  That is a confounding statement when considered in light of both the Family Code's provisions as JUSTICE BOYD ably explains, *post* at ___ (Boyd, J., dissenting), and fundamental principles for interpreting judgments and decrees.  *Hagen*, 282 S.W.3d at 901.

The Court attempts to justify its position by faulting the dissenting opinions for failing to cite decisions holding that courts hearing enforcement actions are categorically barred "from considering direct payments that were not sent to the registry specified in the decree." *Ante* at ___.  The Court misrepresents my position.  To be clear, my disagreement with the Court in this case is not over whether Preston sent support payments through the Harris County Child Support Office.  Indeed, the parties interlined the decree to specifically authorize Preston to make child-support payments directly to Victoria.  My disagreement with the Court is over its condoning Preston's failure to comply with a court order that clearly and unambiguously ordered him to pay specified amounts to Victoria or to return to the court for a modified order.  After all, returning to the court for it to consider whether modification of the 2001 order was in the child's best interest was not only what the trial court ordered when it signed the decree, but was precisely what the Ochsners agreed to when they approved the 2001 decree as to form and content.

It is hard to understand the logic of the Court's position.  Neither the decree's finality nor its validity as to the child-support provisions has been challenged.  The Court says I ignore the distinctions between Chapters 154 and 157 of the Family Code and "focus[]—almost entirely—on the language of the divorce decree.  But our focus is properly on what the Legislature has written, and not exclusively on a trial court's order in an entirely distinct divorce proceeding." *Ante* at __ n.21.  That is a fair statement as to both my focus and the Court's focus.  However, the problem with

7

the Court's focus is that this case is about a divorce decree that was ten years old when Victoria filed suit in 2011 and whose validity and conformance with the law has never been challenged. To repeat what I say elsewhere, Preston just does not like what he agreed to do, and what the trial court ordered him to do, as related to what he did. I cannot go along with Court's failing to abide by well-established principles for interpreting decrees.

The Family Code specifies that each untimely support payment an obligor such as Preston is ordered to make, but does not, constitutes a final judgment for that amount. TEX. FAM. CODE § 157.261(a). The only payments at issue here are those Preston was specifically ordered to make to Victoria after the child no longer attended Enron Kid's Center. Preston does not contend that Victoria is seeking to recover for payments he already made to her either directly or through the Harris County Child Support Office. The divorce decree *allowed* him to either pay through the registry or pay Victoria directly, but it also *required* him to do one or the other. Further, despite the Code's provision that each untimely support payment constitutes a judgment for the unpaid amount and the absence of a Code provision allowing payments to third parties to be counted as payments ordered to be made to Victoria or to be an offset or a credit against the judgments, the Court says that "[a] trial court in a child support *enforcement* proceeding (Family Code Chapter 157)—a wholly separate action from the initial child support *order* proceeding (Family Code Chapter 154)—may consider evidence of direct payments like those that were undisputedly made here when confirming the amount of arrearages." *Ante* at ___. By those statements, the Court effectively authorizes all courts hearing enforcement actions to disregard specific language in both the Family Code and underlying, final support orders.

8

The Court says that "[p]arents need not seek court intervention to bless each and every tuition payment where it satisfies the other parent's school fee obligation or otherwise clearly serves a child's best interests." *Ante* at ___. I agree, provided the child-support obligor does not seek to count the tuition payment as a child-support payment specifically ordered to be made otherwise. But the Court calls multiple payments of thousands of dollars child support in direct contravention of the divorce decree, which clearly and specifically directs that substitute performance for its mandate requiring child-support payments to Victoria is not authorized absent court approval. In my view, non-compliance with such a decree should entail consequences. And it almost did. At the enforcement hearing, the trial court initially, understandably, indicated that Preston was in contempt for not complying with the 2001 decree's support provisions. Lawyers for the Ochsners immediately clarified to the judge that contempt was not an issue being presented; the only issue presented was whether Victoria was entitled to a judgment, and if so, for how much.

The Court recognizes that the Family Code does not authorize payments such as those at issue here to offset or be credited toward child-support payments ordered by a prior decree. And because the decree here does not contemplate, reference, or authorize consideration of tuition or child-care payments other than those to Enron Kid's Center, there is no basis in the Code for allowing those payments to be used to adjust the total amount of unpaid periodic child-support payments specifically ordered by the decree. Nevertheless, the Court's decision effectively converts them into one of those—a *de facto* (1) retroactive modification of the decree, (2) offset against the support payments owed, or (3) credit against the support payments owed. The Court circumvents

9

legislative provisions and our precedent by calling the payments to third parties child-support payments to Victoria, even though the decree undisputedly does not.

The Court not only legally errs, as outlined above and as JUSTICE BOYD sets out in his dissent, but the Court's decision also establishes bad precedent for at least two reasons. First, it dilutes the principle that provisions of final decrees should not be disregarded or substantively undermined in subsequent proceedings by *post hoc* determinations of what might have been better or more equitable provisions. Second, it diminishes the Family Code's attempts by both specific language in its individual parts and its construct as a whole to effect the opposite of what will flow from the Court's decision. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003) (requiring unambiguous statutory language to be interpreted according to its plain meaning and for statutes to be read as a whole to give effect to every part). The Code, in part, is designed to reduce friction in what are frequently highly acrimonious relationships. It does so in large part by minimizing opportunities for litigants to avoid complying with, and courts in subsequent proceedings to "wire around," child-support orders. Preston does not argue that any requirement regarding his child support—amount to be paid, payee, classification of what is child support, timing of payments, or manner of payment—was unclear. Nor does he contend that (1) the provisions of the 2001 decree were not in the best interest of the child, (2) Victoria, acting *pro se*, somehow misled him and his lawyer in order to get them to agree to and approve the decree that does not categorize payments to Enron Kid's Center or any other child care or tuition payments as child support, (3) the decree provides that any such payments can be credited or offset against the support payments he was ordered to make to Victoria, or (4) the support order somehow violated the Family Code. He simply

10

asserts that the court of appeals was wrong: his payments of school tuition and educational expenses after the child no longer attended Enron Kid's Center were child support under the decree, even though they were not referenced in the decree and in the face of the decree's providing that child support was to be paid to Victoria absent "further Order modifying this child support."

JUSTICE GUZMAN concurs to "emphasize that (1) the trial court had discretion to accept proof of Preston's direct payments under section 157.162(c-1) of the Family Code, (2) the result in this unexceptionally unique case is amply supported by the record evidence, and (3) obligors who fail to discharge their child-support obligations by the court-ordered method do so at their own peril." *Ante* at __ (Guzman, J., concurring). I agree with the first point. The trial court had discretion to hear whatever evidence it chose to hear. But the evidence it heard did not prove that Preston complied with the 2001 decree. It proved conclusively that he did not. As to the second point, there are very few cases considered by appellate courts that do not involve unique facts or questions of law. But the real question here is about the *principle* involved, and although of paramount importance, it is not unique: will courts enforce final, lawful, statutorily compliant judgments, or will they not. Unfortunately, the principle the Court embraces is that courts need not do so—at least in family law matters. Even more unfortunately, the Court does not give guidance as to when trial courts should and should not enforce clear language in final decrees, introducing more uncertainty into this type of case. *Compare Hagen*, 282 S.W.3d at 901. In regard to the third point, obligors who fail to discharge child-support obligations "by the court-ordered method" *should* be in peril. But the peril should be predictable. When the applicable principle is that courts need not, but may, enforce final judgments as they are written, there is no predictability based on law. Which is not to

11

say that trial courts cannot exercise discretion in child-support matters. Undisputably they not only can, but must do so on a constant basis. And appellate courts must defer to proper exercises of discretion by trial courts. However, in my view, the trial court's ruling in this enforcement action directly conflicted with and failed to enforce unchallenged, unambiguous provisions of a prior judgment, and was an abuse of discretion.

Nothing precluded Preston from paying for his daughter's private schooling or enriching her life in other ways by exceeding the decree's support requirements. But neither did anything preclude him from seeking modification of the decree as to its child-support provisions, which the decree clearly required him to do, rather than simply not complying with its terms. If he had sought modification, the trial court may have classified his continuing payments for the child's school tuition and education expenses as child support and altered the amounts to be paid to Victoria. But neither the Code nor the decree allowed him to simply disregard the decree's explicit provisions. Nor did the Code or the decree allow the court hearing the subsequent enforcement proceeding to call Preston's payments to third parties child support and substantively credit or offset them against the child-support payments ordered by the decree, or to thereby effectively retroactively amend the underlying order as to what was child support.

Certainty as to (1) the amounts to be paid as child support, (2) what counts as child support, (3) when support payments are to be made, and (4) to whom the payments are to be made, minimizes the friction inherent in support matters. The Court's decision will reduce certainty in those areas and open the door wider for gamesmanship where experience teaches gamesmanship abounds and

12

conflicts regarding child support are more the rule than the exception. This decision can only invite more court proceedings in family law matters, to the detriment of all involved.

In my view, Victoria is entitled to a cumulative money judgment confirming the total of the child-support arrearages based on the serial, monthly final judgments effected by the Family Code for amounts ordered by the decree but not timely paid to her. *See* TEX. FAM. CODE § 157.261. I would affirm the judgment of the court of appeals.

_____
Phil Johnson
Justice

**OPINION DELIVERED:** June 24, 2016