**Opinion issued May 5, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00790-CV

_____

## MARRITA MURPHY, Appellant

## V.

## DANIEL JUDE LEVEILLE, Appellee

On Appeal from the 324th District Court
Tarrant County, Texas[1]
Trial Court Case No. 324-664298-19

## MEMORANDUM OPINION

Appellant, Marrita Murphy, proceeding pro se, appeals from the trial court's

order denying her motion to amend, clarify, or enforce a divorce decree and domestic

---

[1] The Texas Supreme Court transferred this appeal to this Court from the Court of Appeals for the Second District of Texas. *See* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases between courts of appeals).

relations order. She asserts that her former spouse, appellee Daniel Jude Leveille, failed to name her as the survivor beneficiary of his military retirement plan. In three issues, Murphy contends that the trial court erred in denying her motion and erred in concluding that she failed to invoke a deemed election for survivor benefit coverage.

We affirm.

## Background

Leveille and Murphy were married in 1987. In 2000, Leveille completed 20 years of creditable military service. On April 22, 2001, Leveille, a colonel in the United States Air Force (Reserve) ("USAF"), submitted a Reserve Component Survivor Benefit Plan ("SBP") election to the Defense Finance and Accounting Service ("DFAS").[2] Leveille's SBP election named Murphy as spouse beneficiary. In 2005, Leveille filed a petition for divorce. On August 30, 2007, the parties entered into a Mediated Settlement Agreement ("MSA"). On August 31, 2007, the trial court took judicial notice of the MSA and rendered a divorce, to be reduced to a writing at a later date. On November 10, 2007, Leveille married Rhonda Leveille.

On January 18, 2008, the trial court signed a Final Decree of Divorce and a Domestic Relations Order, effectuating a property division between Leveille and

---

[2]    The Survivor Benefit Plan is a Department of Defense sponsored program that allows an eligible servicemember to elect to provide an annuity, payable upon the servicemember's death, to a spouse, former spouse, or child. *See* 10 U.S.C. §§ 1447–1455.

Murphy. Murphy moved to modify the decree, asserting that it did not comport with the terms of the MSA.[3] The MSA provided that Murphy was to receive "1/2 of Respondent's [Murphy's] [sic] interest in [Leveille's Federal Employees Retirement System ("FERS")[4] benefits] and [h]er 1/2 of the community portion of his USAF retirement with right of survivorship."[5] Murphy argued that the survivorship provision applied to both Leveille's FERS benefits and to his USAF retirement, and thus the trial court erred in its decree and order in granting her a right of survivorship only in Leveille's USAF retirement.[6] An arbitrator ruled that Murphy was entitled to "survivor benefits" with respect to both the FERS and USAF plans and that if Murphy "were able to obtain a survivor's benefit plan payable to her[], it would be necessary for her to do so at her own expense."[7]

On March 24, 2008, the trial court rendered an Amended Final Decree of Divorce ("Amended Final Decree"). In the Amended Final Decree, the trial court awarded Leveille, as his sole and separate property, as pertinent here:

---

[3]     *Murphy v. Leveille*, No. 2-08-130-CV, 2009 WL 2619857, at *1 (Tex. App.—Fort Worth Aug. 26, 2009, no pet.) (mem. op.).

[4]     FERS is a civil service retirement plan that provides benefits from three different sources: Basic Benefit Plan, Social Security, and Thrift Savings Plan. https://www.opm.gov/retirement-services/fers-information/.

[5]     *Id.* at *2.

[6]     *Id.*

[7]     *Id.*

5.    All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to or as a result of [Leveille's] service in the [USAF] . . . , including any accrued unpaid bonuses, disability plan or benefits, Thrift Savings Plan or other benefits existing by reason of or as a result of [Leveille's] past employment prior to April 9, 1987, present, or future employment after August 31, 2007, except that portion of [Leveille's] U.S. military retirement and Thrift Savings Plan that have been awarded in this decree to [Murphy] as more particularly specified in the domestic relations order signed coincident with this decree and incorporated verbatim in it by reference. Petitioner will not make any election under the [FERS] or the [USAF] Retirement Plan that would reduce the amounts awarded to [Murphy].

In addition, the trial court awarded Murphy, as her sole and separate property, as applicable here:

5.    All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to or as a result of [Leveille's] service in the [USAF] from date of marriage, that being April 9, 1987 up to date of divorce, that being August 31, 2007, and specifically excluding that portion of [Leveille's] U.S. military retirement that has been awarded in this decree to [Leveille] as more particularly specified in the domestic relations order signed coincident with this decree and incorporated verbatim in it by reference.

The trial court further ordered that "each party shall [timely] complete any forms necessary to effectuate the terms" of the Amended Final Decree.

On July 1, 2008, the trial court signed an Amended Domestic Relations Order

("Amended DRO"),[8] ordering that, although Leveille had not yet retired from the

USAF, the following would apply to his future retirement benefits:

*Award to Nonmember Spouse*

IT IS ORDERED that [Murphy] is awarded fifty percent of [Leveille's] disposable military retired pay[9] the member would have received had the member become eligible to receive retired pay on August 31, 2007. . . . The parties stipulate that the date of marriage is April 9, 1987 and the date of divorce is August 31, 2007 . . . . IT IS FURTHER ORDERED that DFAS pay [Murphy] each month, to the extent allowed by law, the calculated percentage of [Leveille's] disposable retired pay at retirement, together with all cost-of-living adjustments applicable thereto, payable, IF, AS, and WHEN received by [Leveille].

. . . .

*Constructive Trust*

IT IS FURTHER ORDERED that [Leveille] be and is hereby designated a constructive trustee for the benefit of [Murphy] for the purpose of receiving the retired pay awarded herein to [Murphy] as [Murphy's] sole and separate property, and [Leveille] be and is hereby ORDERED, on receipt thereof, to deliver by first-class mail to [Murphy] at her last known address by negotiable instrument that portion of each monthly retired pay payments awarded to [Murphy] herein not paid directly (or by allotment) by DFAS within three days of the receipt of any such payments by [Leveille]. All payments made directly to [Murphy] by DFAS shall be a credit against this obligation.

---

8    A DRO "is a species of post-divorce enforcement order." *In re N.T.P*., 402 S.W.3d 13, 23 (Tex. App.—San Antonio 2012, no pet.). Its purpose is to create or recognize an alternate payee's right, or to assign an alternate payee the right, to receive benefits payable to a participant under a retirement plan. *Id.*

9    "Disposable retired pay" is the total monthly amount of retirement pay to which a member is entitled, less applicable exclusions. 10 U.S.C. § 1408(a)(4).

For purposes of this order, [Leveille] is specifically directed, on penalty of contempt, to pay [Murphy's] interest in the disposable retired pay as ordered in this order, AND IT IS SO ORDERED. . . .

*Death*

IT IS ORDERED that the payment of the disposable retirement pay awarded in this order to Murphy shall continue until the death of [Leveille] or [Murphy]. ***[Murphy] has the option of exercising her right of survivorship.***

. . . .

*Retirement*

IT IS ORDERED that [Leveille] shall notify [Murphy] of his application for retired pay, and provide [Murphy] with a true copy of his Application for Retired Pay Benefits, on the date he applies for those benefits. . . .

*Continued Jurisdiction and Clarification*

Without affecting the finality of the [Amended Final Decree] or [Amended DRO], this Court expressly reserves the right pursuant to section 9.101 et seq. of the Texas Family Code to make orders necessary to clarify, amend, and enforce this order, and IT IS SO ORDERED.

Although the Court and the parties intend that DFAS make direct payments to [Murphy] of [Leveille's] interest in the disposable retired pay awarded herein, IT IS FURTHER ORDERED that, if this order does not qualify for direct payment, [Leveille] and [Murphy] shall cooperate and do all things necessary to aid the parties in obtaining a clarification of this order that will qualify for direct payment of [Murphy's] interest in the disposable retired pay awarded in this order. IT IS FURTHER ORDERED that this Court reserves jurisdiction to enter such a clarifying order.

(Emphasis added.) Thus, the trial court ordered Leveille to pay Murphy a portion of his disposable retirement pay, until his or her death. It granted Murphy "the option" of exercising her right of survivorship. At issue is Murphy's right of survivorship.

6

In her previous appeal, Murphy argued that the trial court's Amended Final Decree and Amended DRO still did not comport with the terms of the MSA with respect to her right of survivorship.[10]  In affirming the Amended Final Decree and amended orders, the court of appeals concluded:

> The trial court's [Amended Final Decree], like the first decree, does not mention Murphy's survivorship rights.  But the "Amended Retirement Benefits Court Order for Division of [FERS] Benefits" states that "Murphy is awarded a former spouse survivor annuity," and the [Amended DRO] provides that, with regard to Leveille's [USAF] benefits, "the disposable retirement pay awarded in this order to [Murphy] shall continue until the death of [Leveille] or [Murphy]. *[Murphy] has the option of exercising her right of survivorship.*"
>
> Murphy argues that the trial court erred by failing to expressly award her survivor benefits in the [Amended Final Decree] and by failing to order Leveille to pay for her survivor benefits. But the trial court's amended orders do specifically provide for Murphy's survivorship benefits, and the decree states that both orders are "incorporated verbatim in [the Amended Final Decree] by reference."  Murphy does not explain why this incorporation by reference was inadequate.  *Further, the mediator ruled in binding arbitration that if Murphy "were able to obtain a survivor's benefit plan payable to her . . . it would be necessary for her to do so at her own expense."  To the extent that the trial court's orders require Murphy to obtain survivor benefits at her own expense, the orders are consistent with the mediator's arbitration ruling.*[11]

(Emphasis added.)

In the instant appeal, Murphy asserts that, in December 2008, she sent a letter to DFAS, seeking to establish former-spouse survivor benefits under the SBP, along

---

10      *Murphy*, 2009 WL 2619857, at *2.

11      *Id.* at *2–4 (emphasis added).

7

with the requisite form and copies of the MSA and Amended DRO.[12] It is undisputed that she did not receive notice from DFAS that a "deemed former spouse election" had been established.[13]

On March 10, 2017, Leveille, having then reached retirement age, filed an Application for Retired Pay ("Application") with DFAS. In his Application, he named his then-current spouse, Rhonda Leveille, as his survivor beneficiary under the SBP, and DFAS established SBP coverage for Rhonda Leveille.

After Leveille sent Murphy a copy of his Application, Murphy inquired with DFAS as to why she had not been established as the survivor beneficiary. DFAS referred her to the Defense Office of Hearings and Appeals, and Murphy appealed.

On January 17, 2019, DFAS issued an Administrative Report ("DFAS Report") in the appeal, explaining that:

> An election to provide [an] SBP annuity to a former spouse must be written, signed by the person making the election, and received by the Secretary concerned within one year after the date of the decree of divorce, dissolution, or annulment. 10 U.S.C. § 1448(b)(3)(A)(iii). . . .

---

[12] A former spouse may apply directly to the branch of service from which the former service person retired for survivor coverage. *See* 10 U.S.C. § 1450(f)(3)(A) ("deemed former spouse election").

[13] *Cf. MacMillan v. MacMillan*, 751 S.W.2d 302, 303 (Tex. App.—San Antonio 1988, no pet.) (stating that, after former spouse presented parties' divorce decree to U.S. Army, in accordance with provisions of "deemed former spouse election" statute, Secretary of the Army notified servicemember that deemed spouse election had been established and then former spouse became eligible for monthly SBP benefit upon servicemember's death).

8

Pursuant to 10 U.S.C. § 1450(f)(3)(A) (2006), if a person described in 10 U.S.C. § 1448(b)(3) is required by a court order to elect to provide an annuity to a former spouse, and such person then fails or refuses to make such an election, such person shall be deemed to have made such an election if the Secretary concerned receives a written request from the former spouse concerned requesting that such an election be deemed to have been made and receives a copy of the court order, regular on its face, which requires such election.

In accordance with 10 U.S.C. § 1450(f)(3)(C)(2006), an election may not be deemed to have been made in the case of any person unless the Secretary concerned receives a request from the former spouse of the person within one year of the date of the court order or filing involved.

. . . .

[Leveille] elected spouse military [SBP] coverage under the Reserve Component for [Murphy], prior to being eligible to receive retired pay. [Leveille] and [Murphy] were divorced on January 18, 2008. Within one year of their divorce, [Leveille] made no request to voluntarily continue survivor benefit coverage for his former spouse, [Murphy].

Neither the Final Decree of Divorce nor any of the subsequent documents specified that [Leveille] was to provide retired military survivor benefit coverage for [Murphy] as his former spouse. The language in those documents pertaining to "survivorship" was vague and general.

. . . .

[Murphy] was not awarded former spouse SBP in the Final Decree of Divorce (or any of the subsequent documents) and [Leveille] did not voluntarily elect former spouse SBP coverage for [Murphy], within one year from the date of their divorce. Consequently, DFAS appropriately denied [Murphy] the former spouse SBP coverage as an eligible beneficiary. . . . We note, however, that when, as here, an award for former spouse SBP coverage fails, a former spouse has the right to pursue an enforceable order from the appropriate state court. If a court later modifies the divorce decree to give the former spouse rights to SBP coverage, a new one-year period arises during which the former spouse can become the member's beneficiary.

9

The DFAS Report noted that, on March 16, 2009, it received a letter from Murphy, seeking to make a former spouse deemed election, along with copies of the MSA and Amended DRO. However, because Murphy failed to include a copy of the final decree, as required, DFAS did not change the SBP coverage from "spouse to former spouse."

On June 26, 2019, Murphy filed a combined "Motion to Amend the Amended [Final Decree], the Corresponding Amended [DRO], and Motion to Enforce with Contempt of Court Against [Leveille]." On August 27, 2019, Murphy filed a combined "Motion to Amend the Amended [Final Decree], the Corresponding Amended [DRO], and [to] Order Completion of DFAS Form." In her motions, Murphy asked the trial court to "modify" the Amended Final Decree and Amended DRO with respect to her "future . . . survivor benefit." She attached a copy of Leveille's Application and the DFAS Report. At a hearing on the motions, at which Murphy appeared telephonically, Murphy asked the trial court to issue an amended or modified decree. The trial court declined, stating that it lacked plenary power to do so. Murphy also asked the trial court to issue a "new decree *clarifying* that [she was] the beneficiary for the survivor benefit . . . in order to start the one-year period over and give [Leveille] a second opportunity to comply with the terms of the divorce." (Emphasis added.) Murphy asserted, however, "It's clear from the

amended final divorce decree that I have survivor benefits and no one else." The trial court concluded that there was nothing to clarify "that would change anything."

After the hearing, the trial court issued an order denying Murphy's August 27, 2019 "Motion to Amend the Amended [Final Decree], the Corresponding Amended [DRO], and [to] Order Completion of DFAS Form." In its findings and conclusions, the trial court found that the Amended Final Decree included an Amended DRO, "specifically awarding [Murphy] the option to make a right of survivorship election." Murphy, however, "failed to show that she followed DFAS procedures and protocols when applying for such survivor benefits" and "failed to comply with DFAS's requests for further action in a timely manner." Thus, "[n]othing in [Murphy's] requested relief could be amended or clarified that would have changed the outcome of any terms of the prior order" and "no relief could be granted."

## Discussion

In her first, second, and third issues, Murphy argues that the trial court erred in denying her motion to amend, clarify, or enforce the Amended Final Decree and Amended DRO because Leveille failed to name her as the survivor beneficiary under the SBP. Murphy further argues that the trial court erred in concluding that she failed to timely invoke the deemed former spouse election for survivor benefits coverage.

11

**A.** *Standard of Review and Applicable Law*

We interpret the language of a divorce decree in the same manner in which we interpret other judgments. *Hagen v. Hagen*, 282 S.W.3d 899, 901 (Tex. 2009). We construe the decree as a whole in order to harmonize and give effect to the entire decree. *Id.* If the decree is unambiguous, we must adhere to the literal language used. *Id.* If the decree is ambiguous, it is interpreted by reviewing both the decree as a whole and the record. *Id.* Whether a divorce decree is ambiguous is a question of law. *Id.* at 901–02.

"Property adjudications in a divorce decree become final the same as other judgments relating to title and possession of property." *DeGroot v. DeGroot*, 260 S.W.3d 658, 662 (Tex. App.—Dallas 2008, no pet.). A motion for new trial or a motion to modify, correct, or reform a judgment, if any, must be filed within thirty days after the judgment is signed. TEX. R. CIV. P. 329b. After the trial court's plenary power expires, the trial court may not alter, amend, or modify the substantive division of the property in the divorce decree. *See id.*; TEX. FAM. CODE § 9.007. Seeking an order that alters or modifies a property division constitutes an impermissible collateral attack. *Hagen*, 282 S.W.3d at 902.

However, the Family Code provides that a trial court that renders a decree retains continuing subject matter jurisdiction to clarify and enforce its property division. *See* TEX. FAM. CODE §§ 9.002, 9.006(a), (b) ("[T]he court may render

12

further orders to enforce the division of property made or approved in the decree . . . to assist in the implementation of or to clarify the prior order" and "may specify more precisely the manner of effecting the property division previously made if the substantive division of property is not altered or changed"); *In re W.L.W.*, 370 S.W.3d 799, 803 (Tex. App.—Fort Worth 2012, orig. proceeding [mand. denied]). "On a finding by the court that the original form of the division of property is not specific enough to be enforceable by contempt, the court may render a clarifying order setting forth specific terms to enforce compliance with the original division of property." TEX. FAM. CODE § 9.008. Similarly, a trial court may issue an order clarifying a domestic relations order. *In re A.E.R.*, No. 2-05-057-CV, 2006 WL 349695, at *2 (Tex. App.—Fort Worth Feb. 16, 2006, no pet.)(mem. op.). "An order to enforce the division is limited to an order to assist in the implementation of or to clarify the prior order and may not alter or change the substantive division of property." TEX. FAM. CODE § 9.007(a).

We review a trial court's denial of a motion for clarification or motion for enforcement of a divorce decree for an abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Murray v. Murray*, 276 S.W.3d 138, 143 (Tex. App.—Fort Worth 2008, pet. dism'd). A trial court abuses its discretion if it acts in an unreasonable and arbitrary manner or without reference to any guiding rules and

principles or erroneously exercises its power by making a choice that was not within the range of choices permitted by law. *Murray*, 276 S.W.3d at 143.

Under the SBP (Survivor Benefit Plan), an eligible servicemember may elect to provide an annuity, payable upon the servicemember's death, to a spouse, former spouse, or child. 10 U.S.C. §§ 1448(a)–(b), 1450. With respect to establishing a former spouse as beneficiary, "[a]ny such election must be written, signed by the person making the election, and received by the Secretary concerned within one year after the date of the decree of divorce." 10 U.S.C. § 1448(b)(3)(A)(iii). A trial court may order a service member to elect to provide an SBP annuity to a former spouse. *See* 10 U.S.C. § 1450(f)(3)(B); *see also Morris v. Morris*, 894 S.W.2d 859, 864–65 (Tex. App.—Fort Worth 1995, no pet.).

If a person is required by court order to elect to provide an annuity to a former spouse and fails or refuses to make such an election, "such person shall be deemed to have made such an election if the Secretary concerned receives" a written request from the former spouse requesting that such an election be deemed to have been made and, as applicable here, a copy of the "court order, regular on its face, which requires such election." 10 U.S.C. § 1450(f)(3)(A). "An election may not be deemed to have been made under subparagraph (A) in the case of any person unless the Secretary concerned receives a request from the former spouse of the person within one year of the date of the court order or filing involved." 10 U.S.C. § 1450(f)(3)(C).

14

A "court order" means a court's "final decree of divorce . . . or a court ordered, ratified, or approved property settlement incident to such a decree (including a final decree modifying the terms of a previously issued decree of divorce . . . or of a court ordered, ratified, or approved property settlement agreement incident to such previously issued decree)." 10 U.S.C. § 1447(13)(A).

**B.** *Analysis*

In her "Motion to Amend the Amended Final Divorce Decree, the Corresponding [Amended DRO], and Order Completion of DFAS Form," Murphy pointed to the following term of the Amended DRO:

> IT IS ORDERED [that] the payment of the disposable retirement pay awarded in this order to [Murphy] shall continue until the death of [Leveille] or [Murphy]. [Murphy] has the option of exercising her right of survivorship.

And, she pointed to the term of the Amended Final Decree stating: "It is ordered that each party shall complete timely any forms necessary to effectuate the terms of this decree." She asserted that Leveille, in his 2017 Application, elected his spouse, Rhonda Leveille, as the beneficiary with right of survivorship, "in violation of [the trial court's] orders." And, the DFAS Report states that "Leveille did not voluntarily elect former spouse SBP coverage for [Murphy], within one year from the date of their divorce." She noted that DFAS stated that "when, as here, an award for former spouse SBP coverage fails, a former spouse has the right to pursue an enforceable order from the appropriate state court." Namely, "[i]f a court later modifies the

15

divorce decree to give the former spouse rights to SBP coverage, a new one-year period arises during which the former spouse can become the member's beneficiary."

In her motion, Murphy first sought to "amend" the 2008 Amended Final Decree and Amended DRO. Specifically, she asked the trial court to "modify" the Amended Final Decree and Amended DRO "as per the DFAS [Report] to assist DFAS in fulfilling the terms" of the MSA and Amended Final Decree.

Any motion to modify, correct, or reform a decree must be filed within thirty days after the date the decree is signed. *See* TEX. R. CIV. P. 329b. Thereafter, the trial court may not alter, amend, or modify the substantive division of the property in the divorce decree. *See* TEX. FAM. CODE § 9.007. Thus, at the time of Murphy's 2019 motion, the trial court was without plenary power to amend or modify its 2008 Amended Final Decree and Amended DRO. Further, Murphy asserts in her reply brief that she "was already awarded the future property DFAS survivor benefit and there was nothing to [substantively] change or modify in the Amended Final Decree."

Next, in her motion and at the hearing, Murphy asked the trial court to issue an order "clarifying" that she is "still the beneficiary as awarded in the amended final decree." Again, "[o]n a finding by the court that the original form of the division of property is not specific enough to be enforceable by contempt, the court may render

16

a clarifying order setting forth specific terms to enforce compliance with the original division of property." TEX. FAM. CODE § 9.008(b). However, Murphy did not assert any ambiguity or lack of specificity in the Amended Final Decree. Rather, at the hearing, Murphy stated, "It's clear from the amended final divorce decree that I have survivor benefits and no one else." And, the trial court found that there was nothing to clarify. Thus, Murphy has not shown on appeal that the trial court abused its discretion in denying her request for a clarifying order. *See Worford*, 801 S.W.2d at 109; *Murray*, 276 S.W.3d at 143.

Next, in her motion, Murphy sought enforcement of the Amended Final Decree as follows: "Murphy prays the Court will enforce this Court's Order for Leveille to file the proper beneficiary form as required by the [Amended Final Decree] awarding Murphy survivor benefits in the DFAS retirement."

We note that the portion of the Amended DRO on which Murphy relied in her motion states: "*Murphy has the option* of exercising her right of survivorship." Thus, the trial court reasonably concluded that, with respect to establishing a right of survivorship, it was incumbent upon Murphy, and not Leveille, to exercise that option. Whether Murphy actually complied with federal law, such that DFAS erred in not designating her as a former-spouse beneficiary under the SBP, is not before

17

us.[14] Not only is DFAS not a party to this appeal, but the issue presented here is whether the trial court erred in denying Murphy's motion for enforcement as against Leveille.

Further, the trial court reasonably concluded that nothing in Murphy's requested relief could have changed the outcome. As discussed at the hearing, ordering Leveille to file a new application at DFAS electing Murphy as former spouse beneficiary would constitute a useless act. *See DiGiuseppe v. Lawler*, 269 S.W.3d 588, 594–95 (Tex. 2008) (noting that Texas law does not require performance of futile acts). Although, under state law, "the SBP annuity was marital property subject to equitable distribution by the trial court[,] . . . the right to claim entitlement to an SBP annuity is also governed by and subject to conditions set forth in the SBP at 10 U.S.C. §§ 1447–1455." *Dugan v. Childers*, 539 S.E.2d 723, 725 (Va. 2001) (quoting *King v. King*, 483 S.E.2d 379, 382 (Ga. 1997)). Federal law is clear that a former-spouse election "must be . . . received by the Secretary concerned *within one year after the date of the decree of divorce*." 10 U.S.C.

---

[14] Further, in her brief, Murphy references numerous documents that she did not present at the hearing, but rather she attached afterwards to her Proposed Findings of Facts and Conclusions of Law in the trial court. She asserts on appeal that the trial court ruled on her motion "without reviewing anything [she] submitted." When reviewing the merits of the trial court's decision, we are limited to considering the material that was before the court at the time that it ruled. *See Cox v. Prince*, No. 2-03-175-CV, 2003 WL 22725407, at *1–2 (Tex. App.—Fort Worth Nov. 20, 2003, no pet.) (mem. op.) ("A trial judge is presumed to consider only the testimony and exhibits properly in evidence.").

§ 1448(b)(3)(A)(iii) (emphasis added). Thus, even were the trial court to use its enforcement and contempt power to compel Leveille to file the required documents to elect former-spouse coverage on Murphy's behalf, as she requests, the ability to effectuate such an election is subject to this federal statutory limit.

Here, Leveille completed 20 years of creditable military service in 2000. On April 22, 2001, he became a reserve-component participant in the SBP and designated Murphy as spouse beneficiary. *See* 10 U.S.C. § 1448(a)(1)(B), (2)(B). On March 28, 2008, the trial court signed the Amended Final Decree. The parties do not dispute that the one-year deadline to re-designate Murphy as a former-spouse beneficiary expired one-year later, in 2009. *See* 10 U.S.C. § 1448(b)(3)(A)(iii). Leveille argued at the motion hearing that the "designation must be made within a one-year period from the date of divorce or it [was] forever barred." Murphy also argued that the "regulations required within one year." And, the trial court noted "it's been 11 years now since this divorce decree."

Although we express no opinion as to whether federal law actually precluded the trial court from resurrecting Murphy's entitlement to be designated a former-spouse beneficiary under section 1448, we cannot say that the trial court's decision to deny Murphy's requested action was unreasonable, arbitrary, or made without reference to any guiding principles. *See Schneider v. Schneider*, 5 S.W.3d 925, 929–330 (Tex. App.—Austin 1999, no pet.) ("[W]e cannot say that the trial

19

court acted in an unreasonable and arbitrary manner or without reference to any guiding principles when it refused to impose a constructive trust. The trial court indicated in its conclusions of law that its decision was based, at least in part, on its belief that the relief . . . requested was preempted by federal law. The record indicates that the trial court was relying on section 1448(b)(2)(B) of Title 10 of the United States Code. . . .").

Again, as DFAS is not a party to these proceedings, the trial court was without authority to enter a judgment purporting to compel DFAS to re-open the statutory one-year election period eleven years after the date of the Amended Final Decree. *See* TEX. R. CIV. P. 124; *Patrick v. Patrick*, 728 S.W.2d 864, 868 (Tex. App.—Fort Worth 1987, writ ref'd n.r.e.) ("The Department of the Air Force was not a party to the proceedings and the trial court was without authority to enter any judgment purporting to order the said department to pay over a portion of the benefits to the appellee.").

Finally, with respect to Murphy's complaint on appeal that the trial court erred in denying her motion to find Leveille in contempt, the record shows that she moved for contempt in her June 2019 motion, and not in her August 2019 motion. And, the trial court's order reflects that it ruled on her August 2019 motion. Murphy does not direct us to any place in the record in which the trial court ruled on her motion for contempt. Further, an order denying a motion for contempt is not appealable.

20

*Norman v. Norman*, 692 S.W.2d 655, 655 (Tex. 1985); *Cadle Co. v. Lobingier*, 50 S.W.3d 662, 671 (Tex. App.—Fort Worth 2001, pet. denied) ("Decisions in contempt proceedings cannot be reviewed on appeal because contempt orders are not appealable, even when appealed along with a judgment that is appealable.").

We hold that Murphy has not shown that the trial court abused its discretion in denying her motion to amend, clarify, or enforce the Amended Final Decree and Amended DRO in the manner that Murphy espouses.

We overrule Murphy's first, second, and third issues.

### Conclusion

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Kelly and Goodman.